Theodore S. WILKINSON, Plaintiff,

v.

Rosalie F. WILKINSON, Defendant.

Civ. A. No. 91–3155.

United States District Court,
District of Columbia.

March 13, 1992.

Lawrence M. Kahn, Chevy Chase, Md., for plaintiff.

Eugene R. Fidell, Mary S. Pence, Feldsman, Tucker, Leifer, Fidel & Bank, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case is before the Court on Defendant, Rosalie Wilkinson's, ("Ms. Wilkinson") Motion to Dismiss or for Summary Judgment. Fed.R.Civ.P. 12(b)(1), (6), 56(c). Plaintiff Theodore Wilkinson ("Mr. Wilkinson") brought this action seeking a declaratory judgment that his former spouse, Ms. Wilkinson, forfeited any interest she might have had in his foreign service retirement benefits in relation to their separation and divorce. Because this Court finds that, as a matter of law, the Foreign Service Act ("Act") applies to the Wilkinsons and that Ms. Wilkinson did not waive the right created by the Act to her husband's retirement benefits, her motion for summary judgment will be granted.

## BACKGROUND

Summary judgment may be granted to the moving party if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment a district court must view the available evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Therefore, for the purposes of this motion, the court accepts the following facts as not in dispute.

Theodore and Rosalie Wilkinson were married on February 4, 1961. That same year Mr. Wilkinson became a foreign service officer of the United States government, and he has held a variety of overseas posts in the foreign service since that time. He is currently the Minister Counselor for Political Affairs at the United States embassy in Mexico City. The Wilkinsons remained married for twenty years.

On February 18, 1980, after two years of living separate and apart, the parties entered into a formal Separation and Property Settlement Agreement ("Agreement"). The Agreement consisted of sixteen typed pages and went into considerable detail concerning the division of property and obligations between the spouses. There was no mention in the Agreement of Mr. Wilkinson's foreign service retirement benefits. The Agreement also contained general waiver provisions. The allegedly pertinent waiver provisions are as follows:

"21. Each party hereby fully releases the other party from any obligation for alimony, support, and maintenance and accepts the provisions hereof in full satisfaction of all obligations for support or otherwise arising out of the marriage relationship of the parties and each relinquishes any right or claim to the earnings, accumulations, money or property of the other. Neither party shall have any obligation not expressly set forth herein.

"22. Except as otherwise provided herein, each party hereby releases and forever discharges the other, his or her ... property and estate from any and all rights, claims, demands, or obligations arising out of or by virtue of the marital relation of the parties ...

"23. ... [E]ach party does hereby release and forever discharge the other of and from all causes of action, claims, rights or demands whatsoever, in law or in equity, which either party *ever had or now has* against the other."

Complaint at § 7; Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment at Exhibit A (emphasis added). The Agreement

also contained a provision providing that its terms be construed in accordance with District of Columbia law. *Id.* at ¶ 28.

On February 15, 1981 the Foreign Service Act of 1980 ("Act") became effective. *See* 22 U.S.C. § 3901 *et seq.* The Act, which applied to foreign service officers married at the time it went into effect, created certain rights for their former spouses to their retirement benefits after a divorce. In the Act, Congress provided that this statutory entitlement would control division of the foreign service pension "[u]nless otherwise *expressly* provided by any spousal agreement." 22 U.S.C. § 4054(a)(1) (emphasis added). Subsequent to the Act, on May 18, 1981, the parties were divorced by decree of the Superior Court of the District of Columbia.

After the divorce, Plaintiff continued as an active member of the foreign service. Recently, however, he sought to change his retirement plan from the Foreign Service Retirement and Disability Program to the Foreign Service Pension system. Because such changes often affect the amount of the payments to be made to a former spouse, the State Department ("Department") requires that any former spouse with an interest in the employee's retirement benefits approve before it will make the change.[1] Upon review of the Separation Agreement and the facts in this case, the Department concluded that Ms. Wilkinson was, indeed, entitled to a portion of her former husband's retirement benefits as provided in the act. In an April 30, 1991 letter to Ms. Wilkinson the Department specifically concluded:

> "We have determined that you are qualified as a former spouse in accordance with the former spouse provisions of the Foreign Service Act of 1980, as amended. We do not accept Articles 21 and 23 of your Separation Agreement as a waiver of your benefits under the Act. While you and your former husband may have intended to make a waiver of claims under the Foreign Service Act of 1980, as amended, until a notarized spousal agree-

ment is filed expressly waiving your pension entitlement and a valid court order is filed expressly waiving your survivor annuity entitlement, you retain your pro rata share former spouse benefits."

Defendant's Memo. at Exhibit B. The State Department, therefore, decided that because no express waiver of retirement benefits was filed, Ms. Wilkinson still held her Congressionally created right to a portion of her husband's benefits. The Department refused to allow Mr. Wilkinson to change retirement plans, and he brought this suit seeking a declaratory judgment that his wife has no entitlement to his foreign service pension benefits.

### DISCUSSION

■ As a preliminary matter I reject Plaintiff's argument that the Foreign Service Act does not apply to him at all because, although he was married at the time the Act came into effect, he was already separated from his spouse. Plaintiff asserts that because he and his wife had already executed a separation agreement at the time the Act became operative, he should be placed in a special class of "separated people"—and not treated like the rest of the people who were married at the time of the Act.

Although the Court can understand Plaintiff's concern that, as a separated person, he may not be the same as other married people, Congress did not choose to create such an exception, and this Court cannot substitute its judgment for the decisions of Congress. *See generally Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963); *U.S. v. Carolene Products*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The Act, by its terms, applies to anyone who was the spouse of an eligible foreign service officer on February 15, 1981. No Court had entered a divorce decree as of that date. Therefore, the Wilkinson's are covered by the Act. *See Williams v. Williams*, 472 A.2d 896, 898 (D.C.1984) (finding "entitle-

---

1. According to the State Department, the change Mr. Wilkinson was attempting to make would have decreased the payments to his wife by over $1,500 per year upon his retirement and $2,000 per year upon his death. *See* Def.Mem. at Exhibit B.

ment to a pro rata share of [spouse's] retirement and survivor annuities under the Act was established after the adoption of the settlement agreement and before the entry of a divorce decree."). Therefore, the statute entitles Ms. Wilkinson to a portion of Mr. Wilkinson's pension absent a qualified agreement to the contrary.

■ The Foreign Service Act of 1980 requires that any waiver by a former spouse of his or her rights in the retirement benefits of a former spouse must be "express." In enacting this provision, Congress was acutely aware of "the special problems faced by Foreign Service spouses." S.Rep. No. 913, 96th Cong., 2d Sess. 67 (1980), 1980 U.S.C.C.A.N. 4419, 4550. The requirement that any waiver of rights be express reflects Congress' stated concern that:

> "[O]verseas service frequently results in cutting off these individuals from their community roots, thereby exacerbating the problems normally faced by women seeking divorce. In particular, this results in reliance on a husband's lawyer or on his recommendation. Section 814, therefore, seeks to provide some protection for these individuals ..."

Thus, the law clearly requires and Congress intended that any waiver of statutory rights to retirement benefits be "express." Congress reasonably inserted such a requirement to protect foreign service spouses from the possibly stressful or even coercive situations which it thought could arise in the context of a divorce. As a matter of law, then, an unexpressed intention on the part of the parties to effect a waiver is insufficient.

The general waiver provisions in the Wilkinsons' separation agreement are not sufficient to terminate Ms. Wilkinson's statutory entitlement to her former husband's pension. First, the Department has reasonably construed the Act's "express" waiver provision to require that a former spouse file "a notarized spousal agreement

... expressly waiving [the] pension entitlement." D.Mem. at Exhibit B. The Department's interpretation of the waiver requirement is clearly in accord with both the plain language and the Congressional intent of the Act. Thus, the Department's construction governs this case. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). It is undisputed that no notarized agreement has been filed with the Department in which Ms. Wilkinson expressly waived her rights to her husband's pension.[2] Therefore the Department is correct in continuing to recognize Ms. Wilkinson's entitlement to Mr. Wilkinson's retirement benefits.

In addition, under District of Columbia law, the separation agreement does not contain a sufficiently express waiver. In *Williams v. Williams,* 472 A.2d 896 (D.C. 1984), the D.C. Court of Appeals held that a general waiver in a separation agreement, executed before the Act went into effect, could not be read as an "express" waiver of foreign service pension benefits.

Like the separation agreement in *Williams,* the Wilkinsons' Agreement is general in its terms, never referring expressly to the rights created under the Act or even to foreign service pension benefits generally. Like *Williams* the Agreement in this case was executed before the Act went into effect, when the statutory right which Ms. Wilkinson is said to have waived did not even exist in its present form. Finally, like *Williams* the release provision in the Agreement does not mention Congressional entitlements created in the future, but refers to claims which either party "ever had or now has." D.Mem. at Exhibit A, ¶ 23. Under these circumstances, "[t]he creation by statute of a spousal entitlement subsequent to this property settlement agreement and before entry of a divorce decree cannot be erased by a waiver clause limited to claims extending only to the date of the settlement agreement itself." *Williams,* 472 A.2d at 899.

---

**2.** If Mr. Wilkinson believes that Ms. Wilkinson is contractually obligated to file such a waiver with the Department, his proper remedy is to sue his wife for specific performance of the Separation Agreement in D.C. Court, not to bring an action in this Court seeking a declaratory judgment.

The Plaintiff complains that Ms. Wilkinson has received a "windfall" in her husband's pension benefits. It is not before this Court, however, whether or not Ms. Wilkinson received an unexpected benefit after serving her country for twenty years as the spouse of a foreign service officer. If she did receive such a "windfall," it was because Congress chose to give it to her, and any complaints which Plaintiff might have should therefore be directed to the legislature, not the judiciary.