## Richmond

WILLIAM DAVID MUELLER

v.

COMMONWEALTH OF VIRGINIA

No. 1521-91-2

Decided February 2, 1993

COUNSEL

Homer C. Eliades (Sherri P. Eliades; Eliades & Eliades, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—William David Mueller appeals from a conviction for making false statements to obtain property or credit in violation of Code § 18.2-186. On appeal, he argues that the trial court erred (1) in concluding that the evidence was sufficient to support his conviction; and (2) in admitting the testimony of Ronald Deloatch, who bought and took possession of the vehicle at issue before appellant pledged it as collateral on a loan. We affirm the conviction.

I.

Appellant Mueller, as operator of Waverly Auto Sales, sold a 1988 Renault Medallion to Ronald Deloatch on July 31, 1990, for a price of $4,900. Deloatch received the car on August 6, 1990. He paid Mueller $2,900 on August 17, 1990 and $1,900 on August 25, leaving a balance of $100 on the purchase price. Although Mueller did not deliver the certificate of title to Deloatch at the time of the sale, he promised to do so soon afterward.

On August 30, 1990, following the abovementioned sale but prior to delivery of the title to Deloatch, appellant had issued to him a title for the 1988 Renault, which listed Central Fidelity Bank as lienholder. That lien was released on September 13, 1990. On September 28, 1990, appellant entered into a loan agreement with the Bank of

Southside Virginia, in Wakefield. Appellant received $3,510 and delivered as security the title to the 1988 Renault already sold to Deloatch. The security agreement entered into by the parties provided that the borrower owned the pledged property "free of any claim by any other person" and that the purpose of the security interest was to "secure the payment of the note total." The agreement also provided that the borrower would keep the collateral "in [his] possession" and "in good condition and repair."

Some time following the execution of the collateral agreement, the bank's branch manager, Frances Bria, and the bank's attorney, James Clements, made separate visits to the lot and discovered that the Renault was not there. When questioned by Clements as to the location of the vehicle, appellant told him that his sister had taken the car to Alexandria, when in fact it had already been sold to Deloatch.

The loan agreement was renewed in November 1990. In January 1991, Deloatch filed a dealer complaint with the Department of Motor Vehicles based on appellant's continued failure to deliver the title. Appellant then satisfied the lien, which was released later that month, and transferred the title to Deloatch in February.

At trial, appellant moved to strike the Commonwealth's evidence both at the conclusion of the case-in-chief and at the close of trial. Both motions were denied.

## II.

Appellant separates his challenge to the sufficiency of the evidence into three different issues. First, he argues that the note was only introduced, not actually admitted, into evidence and that, as a result, it may not be considered by this Court in reviewing the sufficiency of the evidence on appeal. Second, he argues that he was indicted under subsection (2) of the statute and that the evidence was insufficient to support a conviction under that subsection because the Commonwealth did not prove a necessary element—that he failed to repay the loan. Third, he argues that, even if this Court determines he was indicted and convicted under subsection (1) instead of (2), the Commonwealth's evidence was insufficient to support a conviction under that subsection because it again failed to prove a necessary element—that he made a false statement.

In considering appellant's challenge to the sufficiency of the evidence on appeal,

we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code § 8.01-680).

### A.

Appellant is correct that the note involved in this case was never admitted into evidence at trial. This does not, however, mandate the conclusion that it may not be considered by this Court on appeal.

■ While it is clear that the note was never properly offered into evidence at trial, the record transmitted to this Court on appeal contains a copy of the note. The transcript contains references establishing that the parties and the court *thought* the note had been admitted. At one point during the trial, counsel for appellant referred to the document evidencing the agreement between appellant and the Bank of Southside "which [the] Commonwealth has very ably put into evidence." Not until submitting this appeal did appellant contest the trial court's consideration of the note. Case law makes clear that "formal introduction [of documentary evidence] is waived where the court and parties treat an instrument as in evidence, . . . or where it is read without objection." *Martin v. Winston*, 181 Va. 94, 105, 23 S.E.2d 873, 877, *cert. denied*, 319 U.S. 766 (1943). On that basis, we hold that appellant waived his right to challenge consideration of the note both at trial and on appeal.

### B.

Appellant argues that the Commonwealth indicted him for a violation of subsection (2) of Code § 18.2-186 and, as such, had to prove that he made a false statement regarding his financial condition or ability to repay the loan and actually failed to repay the loan. The indictment refers only to Code § 18.2-186, without specifying a particular subsection. It charges appellant with "unlawfully and feloniously . . . [procuring] property or credit of the value of $3500.00 knowing that such benifit [sic] was obtained on the basis of a false statement in writing, from the Bank of Southside Virginia." This charge does not track the language of either subsection specifically and could, in our

judgment, support a conviction under either section. If appellant had desired additional information, he could have requested a bill of particulars.

Although the record does not contain any explicit references to either subsection by number, it appears that appellant was aware he was being prosecuted under subsection (1). At trial, he argued only that the Commonwealth had failed to prove that he made a false statement, an element of subsection (1). In addition, counsel for appellant actually read a portion of subsection (1) during closing arguments, while discussing the elements of the crime to be proven by the Commonwealth. He did not assert the alleged variance between the indictment and proof as a basis for objection at trial. Appellant's first clear reference to subsection (2) appeared in his motion to set aside the verdict, in which he argued that the Commonwealth had failed to prove nonpayment, an element of subsection (2), not subsection (1). However, because this motion was filed more than twenty-one days after the entry of judgment, the trial court was without jurisdiction to entertain it. *See* Rule 1:1. On that basis, we hold that appellant's objections were not timely raised and that it was proper for the Commonwealth to offer proof of the elements delineated in subsection (1).

## C.

Appellant also argues that the evidence was insufficient to support a conviction under subsection (1) because the Commonwealth proved neither that he made a false statement nor that the bank relied on that false statement. Viewed in the light most favorable to the Commonwealth, the evidence established that appellant listed the 1988 Renault as collateral for the loan, even though he had already received $4,800 of the $4,900 purchase price and delivered the car to the purchaser. The note he signed stated that he owned the pledged property "free of any claim by any other person" and that the purpose of the security interest was to "secure the payment of the note total." It also provided that the borrower would keep the collateral "in [his] possession" and "in good condition and repair." Although appellant retained title to the vehicle while the note was outstanding, he did not have the vehicle in his possession at any time during that period and he knew that Deloatch had a contractual claim to the car.

█ Appellant asserts that the above-quoted contractual language was not a statement "made" by him as required under the statute. Rather, he argues that it was boilerplate language found in small print

on the back of the note. We reject appellant's tendered interpretation of the statute. The statute refers to "[a]ny person who . . . [s]hall knowingly *make or cause to be made, either directly or indirectly*, or through any agency, any false statement in writing . . . for the purpose of procuring . . . a loan." Code § 18.2-186(1) (emphasis added).

> As a general principle, one who accepts a written agreement or contract is presumed to know and assent to its contents. In addition, it is hornbook law that one who [signs] a written contract . . . will normally be bound by its terms and [that] ignorance . . . of the terms will not ordinarily affect the liability of such person under the contract.

*Simmons v. Peoples Bank*, 27 B.R. 508, 510 (Bankr. W.D. Va. 1983) (holding that debtors were bound by agreement giving bank a lien on their vehicle). Although this case involves a criminal statute that proscribes the making of a false statement, the reasoning in *Simmons* is applicable. Whether appellant was aware of the language on the back of the note is a question of fact resolved against him by the trial court. This resolution is supported by credible evidence, not the least of which is that where appellant signed the note a block was marked indicating that the terms on the back of the note were controlling.

The construction appellant urges us to adopt would bar conviction where the party charged merely signed the note but would authorize conviction if he had recopied the terms of the note in his own handwriting prior to signing. *Black's Law Dictionary* 955 (6th ed. 1990) defines "make" somewhat more broadly as "[t]o execute as one's act or obligation" and provides as examples "to make a note" and "to make a contract." Under the above-quoted definition, we hold that the "making" of a false statement as proscribed in Code § 18.2-186(1) encompasses both direct and adoptive acts. Although the statute also requires that such statement be made *knowingly*, appellant did not contest the Commonwealth's proof as to this element of the crime.

■ Appellant also argues that the Commonwealth's evidence failed to show the bank relied on his false statement. Although it appears that this statute has not yet been interpreted by a Virginia court, the statute does not require proof of the bank's reliance on the false statement. Rather the statute requires only that the person making the statement do so "with [the] *intent* that it shall be relied upon." Code § 18.2-186(1) (emphasis added). Because appellant did not contest the

Commonwealth's proof of intent, we will not review the sufficiency of the evidence as to that element.

For the aforementioned reasons, we conclude that the Commonwealth's evidence was sufficient to support appellant's conviction.

## III.

Appellant also claims the trial court erred in admitting the testimony of Ronald Deloatch, who bought and took possession of the vehicle at issue before appellant pledged it as collateral on a loan. He asserts that Deloatch's testimony was irrelevant or, even if relevant, more prejudicial than probative.

█ Determining "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citing *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)). Evidence is generally admissible if it is both relevant and material. *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987). If these criteria have been met, the court must then determine whether the prejudicial effect of the evidence outweighs its probative value. *Id.* However, "[t]he fact that some prejudice may result does not justify automatic exclusion." *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, we find that the trial court could easily have concluded that the testimony presented by Deloatch was both relevant and material to an element of the crime charged—the truth or falsity of appellant's representations in the note as to possession and ownership of the vehicle. The trial court could also have concluded that the evidence was more probative than prejudicial. From the state of the record on appeal, we cannot conclude that the trial court abused its discretion in admitting Deloatch's testimony.

For the aforementioned reasons, we affirm the judgment of the trial court.

*Affirmed.*

Fitzpatrick, J., and Moon, J., concurred.