COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Fitzpatrick
Argued at Alexandria, Virginia


MARIA-TERESA NICHOLSON

v.          Record No. 1249-94-4                 OPINION BY
                                          JUDGE SAM W. COLEMAN III
RONALD L. NICHOLSON                          OCTOBER 31, 1995


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Benjamin N.A. Kendrick, Judge

            Lauren E. Shea (Sherman, Meehan & Curtin, P.C.,
            on briefs), for appellant.

            Yvonne DeBruyn Weight (Eric Michael Weight; Weight
            & Weight, on brief), for appellee.



     This domestic relations case involves the statutory right of

entitlement of a former spouse in her former husband's retirement

annuity under the Foreign Service Act of 1980, as amended, 22

U.S.C. § 3901 et seq.[1]  The trial court held that, when

Maria-Teresa Nicholson signed the parties' 1981 property

settlement agreement relinquishing and releasing all rights to

which she may have been entitled in property thereafter acquired

by her former husband, Ronald L. Nicholson, she expressly waived

her entitlement to a share of her former spouse's retirement

annuity under the Foreign Service Act (Act).  We find that the

terms of the Nicholsons' property settlement agreement are

---

[1] Although the ultimate issue in this case involves the
rights of parties under a federal statute to retirement benefits
of a foreign service employee, the Court of Appeals has
jurisdiction of this appeal pursuant to Code § 17-116.05(3)(b)
and (f) because the proceeding involves the construction of a
property settlement agreement incorporated into a divorce decree.

insufficient to support the trial court's finding of an express waiver. Accordingly, we reverse the trial court's ruling. We remand the case for the trial court to enter an order holding that Maria-Teresa Nicholson did not, in the May 4, 1981, property settlement agreement, expressly waive her statutory right to a share of her former spouse's retirement annuity.

The Nicholsons were married in 1968 and separated in 1980. Throughout the marriage, Ronald Nicholson was employed by the United States Foreign Service. Effective February 15, 1981, Congress enacted The Foreign Service Act of 1980, 22 U.S.C. § 3901 et seq., which conferred upon former spouses of members of the foreign service entitlement to a retirement annuity of up to fifty percent of the participant's annuity, depending upon the duration of the participant's service and marriage, "[u]nless otherwise expressly provided by [a] spousal agreement or court order."[2]

---

[2] 22 U.S.C. § 4054(a)(1) states in part: "Unless otherwise expressly provided by any spousal agreement or court order under Section 4060(b)(1) of this title, a former spouse of a participant or former participant is entitled to an annuity." (Emphasis added).

22 U.S.C. § 4060(b)(1)(A) further provides:

In the case of any participant or annuitant who has a former spouse who is covered by a court order or who is a party to a spousal agreement . . .

(i) any right of the former spouse to any annuity under Section 4054(a) of this title . . . shall be determined in accordance with that spousal agreement or court order, if and to the extent expressly provided for in the

On May 4, 1981, two and one-half months after the effective date of the Foreign Service Act of 1980, the Nicholsons executed a property settlement agreement.[3]  The pertinent provisions of their property settlement agreement, which Ronald Nicholson contends constitute an express waiver of Mrs. Nicholson's rights under the Act, are as follows:

>[The parties] desire to effect a full and complete settlement of their respective property rights.

>* * * * * * *

>5.  It is further understood and agreed that both parties shall have the right to sell or otherwise dispose of any and all property, which he or she may now or in the future own personally (and not listed herein) without demand being made upon either of them. . . .

>6.  Each of the parties does hereby relinquish and release to the other all rights and curtesy or dower that he or she may have in the property hereinafter acquired by either of them . . . .

The parties were divorced in 1985, and the decree "affirmed

---

terms of that spousal agreement or court order.

[3] At the time the Nicholsons entered into their property settlement agreement, the Virginia General Assembly had not enacted the equitable distribution statute, Code § 20-107.3.  The statute did not become effective until July 1, 1982.  Therefore, when the Nicholsons contemplated the terms of their property settlement agreement neither spouse had a basis under Virginia law to claim or expect a share in the other's retirement benefits.  Thus, although Maria-Teresa Nicholson's claim is one of statutory entitlement under the federal Foreign Service Act, rather than a claim for equitable distribution, the state of the law in Virginia as to equitable distribution at the time of their agreement is relevant to an understanding of the terms of their agreement.

-3-

ratified and incorporated by reference" the property settlement agreement. In 1994 when Ronald Nicholson retired from the foreign service, Maria-Teresa Nicholson filed a claim with the Department of State for a former spouse's annuity under 22 U.S.C. § 4054(a)(1). In response, pursuant to Code § 20-121.1, Ronald Nicholson filed a petition in the Arlington County Circuit Court to have their divorce case reinstated on the docket in order to have the court construe whether the terms of the property settlement agreement "expressly waived" Maria-Teresa Nicholson's right to a share of his retirement annuity.[4] See also Code § 20-107.3(K)(4) (conferring authority and jurisdiction on a divorce court to enforce or modify a divorce decree in such a manner as to affect or divide a pension or retirement benefits pursuant to federal laws "so as to effectuate the expressed

---

[4] At a hearing for reconsideration of the trial court's ruling, Maria-Teresa Nicholson presented a letter from the United States Department of State which stated that the Department had reviewed the Nicholsons' property settlement agreement and determined that the spousal agreement and divorce order did not expressly waive her statutory entitlement to an annuity. Although the trial judge viewed and considered the letter at the reconsideration hearing, he did not mark the letter as an exhibit and formally admit it into evidence. See Rules 5A:7 and 5:10. Consequently, Ronald Nicholson has requested on appeal that it be stricken from the record and not considered. However, because the trial court viewed and considered the letter, but did not receive it as an exhibit, we deny Mr. Nicholson's motion to strike the letter from the record. See Mueller v. Commonwealth, 15 Va. App. 649, 652, 426 S.E.2d 339, 341 (1993); see also Martin v. Winston, 181 Va. 94, 105, 23 S.E.2d 873, 877, cert. denied, 319 U.S. 766 (1943). Nevertheless, the letter is irrelevant to our determination because we decide whether the spousal agreement or court order expressly waives the former spouse's statutory entitlement to a retirement annuity based upon the law and facts independent of the State Department's administrative decision.

-4-

intent" of a prior decree).  The trial court held that "by the
terms of said Property Agreement," Maria-Teresa Nicholson "has
waived any property rights" or "any entitlement that she may have
had . . . to any portion of the pension or other retirement
benefits" of Ronald L. Nicholson.  This appeal followed.

**ANALYSIS**

Under 22 U.S.C. § 4054(a) a former spouse, who was married
to a foreign service member for a requisite number of years of
creditable service, is entitled to a share of the member's
retirement annuity, unless or until the former spouse of the
member remarries before age 60.  When Congress enacted the
provisions of the Foreign Service Act that established the right
of a former spouse to a share of a foreign service retiree's
annuity, Congress preempted the right of states to determine the
property rights of a former spouse according to the state's
respective family law principles.[5]  In doing so, however,

---

[5] By enacting the former spouse provisions of the Foreign
Service Act, Congress determined not to grant to the states the
deference traditionally shown by the federal government in the
area of a state's family and domestic relations law.  In
explaining the reasons for its action, Congress stated, "[w]idely
varying divorce laws from state to state would result in
different awards of a Federal benefit for the same deprivations.
 Furthermore, there is little or no awareness among the legal
community of the special problems faced by Foreign Service
spouses."  Congress recognized the need for a former spouse
annuity due to the fact that spouses of Foreign Service members
could rarely establish their own independent careers or
retirement pensions due to frequent transfers to various posts.
S. Rep. No. 913, 96 Cong. 2d Sess. 67 (1980), reprinted in 1980
U.S.C.C.A.N. 4419, 4485.  Cf. Hisquierdo v. Hisquierdo, 439 U.S.
572, 581 (1979).

Congress limited its federal preemption by recognizing that the parties and state courts have a superior right under their domestic relations law to determine those marital or property rights when "expressly provided by any spousal agreement or court order." (Emphasis added). 22 U.S.C. § 4054(a)(1). Thus, 22 U.S.C. § 4054 recognizes that divorcing parties in a spousal agreement or divorce courts in their decrees may (1) vary the amount of the retirement annuity payable to a former spouse from the amount set by statute, subject to the maximum limitation provided by the Act, or (2) may release, relinquish, or waive any or all rights a former spouse may have in a member's retirement annuity under the Act. Id. However, in order for a spousal agreement or court decree to affect a former spouse's statutory right to the federal pension, 22 U.S.C. § 4060(b)(1)(A) provides that the spousal agreement controls only "if and to the extent expressly provided for in the terms of that spousal agreement." See Wilkinson v. Wilkinson, 785 F. Supp. 1037 (D.D.C. 1992), aff'd 986 F.2d 546 (1993) (holding that general waiver or release of "all . . . claims . . . or demands" was not sufficient to satisfy the "express waiver" provision).

Therefore, we look to the Nicholsons' 1981 property settlement agreement to determine if and to what extent the agreement "expressly provides" for a waiver or relinquishment of Maria-Teresa Nicholson's rights to her share of Ronald Nicholson's foreign service retirement annuity. If the

-6-

provisions of the Nicholsons' spousal agreement can be reasonably construed to "expressly" waive Maria-Teresa Nicholson's entitlement to a share of her former spouse's retirement annuity, the trial court's judgment must be affirmed. Code § 8.01-680; see Galloway Corp. v. Wise, 244 Va. 344, 346, 421 S.E.2d 431, 433 (1992).

When a judgment is based upon the construction or interpretation of a contract, an appellate court is not bound by the trial court's construction of the contract's provisions. Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). An appellate court is equally able to construe the meaning of the provisions of an unambiguous contract. Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984).

Ronald Nicholson contends that the holding in Himes v. Himes, 12 Va. App. 966, 407 S.E.2d 694 (1991), controls our decision in this case. We disagree. Himes dealt with whether, under Virginia law, a general waiver of property rights in a property settlement became a vested right that prevented one spouse from making a claim against the other spouse's retirement benefits when the equitable distribution statute was subsequently enacted. The Nicholsons' case involves the interpretation and application of a federal statute, which has a requirement of "express" waiver by a spousal agreement or court order.

The terms of the Nicholsons' spousal agreement are not ambiguous. Interpretation of this contract does not require the

admission of parol evidence in order to understand it.  The sole question for our consideration is whether the terms of paragraphs 5 and 6, when considered with the general purpose of the agreement stated in the preamble, satisfy the requirements of 22 U.S.C. §§ 4054(a)(1) and 4060(b)(1)(A) that before a former spouse may be denied her federal statutory entitlement, the spousal agreement must "expressly" provide for a waiver or relinquishment.  Accordingly, while we construe the Nicholsons' agreement according to Virginia principles of contract construction, the statutory requirement that the rights of the parties "shall be determined in accordance with that spousal agreement . . . if and to the extent expressly provided for in the terms of that spousal agreement" is a standard established by federal statute.  In determining whether the spousal agreement "expressly" waives a federal statutory right, the purpose of the federal statute and what is required in order to establish an express waiver are questions of federal law, and the intent of Congress in enacting the Foreign Act will control.  Wilkinson, 785 F. Supp. at 1039-40.

In the absence of federal court decisions construing this statute, we must determine what Congress intended when it provided that the spousal agreement will control the federal pension right "if and to the extent expressly provided for in the terms of that agreement."  Considering the legislative history of 22 U.S.C. §§ 4054 and 4060, see n.5, supra, we believe that

-8-

Congress clearly intended that the statutory entitlement of a former spouse under the Foreign Service Act cannot be waived or released by a general waiver or release.  See id. at 1040.

Given the language of the federal statute, particularly when considered with its legislative history, Congress clearly intended that in order to waive, release or vary the terms of the statutory entitlement, more would be required than a general waiver of property rights.  Id.  The intent of the parties or court to waive or vary this federal statutory right must be manifest from the "express" terms of the agreement or decree.

We do not, by this holding, necessarily construe 22 U.S.C. §§ 4054 and 4060 to require that a spousal agreement or court decree, in order to constitute an "express waiver," specifically mention retirement benefits or an annuity under the Foreign Service Act.  See generally Bragan v. Bragan, 4 Va. App. 516, 358 S.E.2d 757 (1987).  A general waiver or release may be sufficient if, from the terms of the agreement, the parties' intent to include pension or retirement benefits is clear and unambiguous. Although a general waiver of all property rights that one spouse may presently have in a property interest acquired by the other might satisfy the requirements of an "express waiver," the provisions in paragraphs 5 and 6 of the Nicholsons' agreement do not in our opinion meet the federal standard of an "express" waiver of the statutory entitlement to the former spouse's annuity.

Although the Nicholsons' expressed intention for entering the agreement was to resolve "all their property rights," that general statement of purpose, in the absence of provisions that expressly address their property rights, cannot be construed as an express release or waiver of property rights. The general statement of purpose does not satisfy the requirement of 22 U.S.C. §§ 4054(a)(1) and 4060 that the spousal agreement must "expressly" provide for terms that vary the statutory benefits or which release or relinquish the former spouse's retirement annuity.

The provisions of the Nicholsons' spousal agreement do not mention Mr. Nicholson's entitlement under the Foreign Services Act. The parties' agreement does not even mention retirement rights or pension benefits generally. See Dean v. Dean, 8 Va. App. 143, 379 S.E.2d 742 (1989) (holding that a broad categorical waiver of equitable distribution, spousal support and attorney's fees did not waive all of a spouse's property rights). At most, paragraphs 5 and 6 constitute general waivers of rights of inheritance or relinquishment of rights to make a claim on property acquired after the agreement.

In paragraph 5, the Nicholsons covenanted that each had the right to sell or alienate his or her property without the other making any demand upon the after-acquired property. This provision did no more than recognize the right of each party to dispose of his or her property without "demand" from the other.

-10-

Paragraph 6 of the Nicholsons' agreement is even more limited in scope than is paragraph 5. When read in conjunction with paragraph 5, paragraph 6 accomplishes somewhat the same result as does paragraph 5. However, it applies only to "property hereinafter acquired by either" party and, thus, has no application to Maria-Teresa Nicholson's annuity under 22 U.S.C. § 4054, an inchoate entitlement Maria-Teresa Nicholson possessed at the time the agreement was executed. Thus, we hold that paragraphs 5 and 6 did not "expressly" provide for a waiver, release, or relinquishment of Maria-Teresa Nicholson's benefits under the Foreign Services Act.

We hold, therefore, that the terms of the Nicholsons' property settlement agreement are insufficient to support the trial court's finding that Maria-Teresa Nicholson "expressly" waived her right to her former spouse's annuity under the Foreign Service Act. Accordingly, we remand the case for the trial court to enter a final order in the case in accordance with the holding herein.

Reversed and remanded.