Charles B. ANGULO, Appellant,

v.

Lois A. GOCHNAUER, Appellee.

No. 99–CV–679.

District of Columbia Court of Appeals.

Argued Dec. 12, 2000.

Decided May 17, 2001.

Robert N. Levin, for appellant.

Linda J. Ravdin, Washington, DC, for appellee.

Before STEADMAN, RUIZ and GLICKMAN, Associate Judges.

STEADMAN, Associate Judge:

Before us is a dispute over a former wife's right to what might be termed, somewhat imprecisely,[1] a share in her ex-husband's retirement benefits under the Foreign Service Act of 1980, 22 U.S.C. § 3901, *et seq.* Appellant, the ex-husband, claims that appellee, the ex-wife, waived that right in their property settlement agreement. Alternatively, he argues that she is barred by promissory estoppel.[2] The trial court granted summary judgment for the appellee, primarily on the ground that the agreement did not "expressly provide[ ]" for such a waiver, as required under the Act. We affirm.

## I.

The parties were married on November 27, 1974. In 1985, the parties entered into a property settlement agreement, and were divorced shortly thereafter. *Id.* Approximately one year later, appellant remarried. *Id.* Relevant to our analysis, from one year prior to their marriage in 1974 until his retirement in 1998, appellant was employed as a foreign service officer.[3] *Id.*

The parties stated in a "whereas" clause of the property settlement agreement that they desired "to settle all rights, interests

1. See note 4, *infra.*

2. Appellant also challenges the trial court's ruling in regards to his unjust enrichment claim. However, we do not see this theory as a separate claim because such a claim would have to be predicated on either the property settlement agreement or the oral promise underlying the promissory estoppel claim. Be-

cause we affirm the trial court's ruling on both of these claims, we need not separately address the unjust enrichment claim.

3. Appellee herself began working as a foreign service officer in 1980 and was still so employed at the time of trial. She had not then remarried.

and obligations between them and to obtain a full, complete and final property settlement and agreement, including a settlement of all property interests and all claims between or against each other[.]" The agreement thereafter contained the following provisions upon which appellant relies:

(3) Each party hereby forever discharges, relinquishes and releases all right, title and interest which he or she now has or ever had or ever may have in and to the real, personal and mixed property of the other; all rights of curtesy and dower; all right, title and interest which he or she has or may ever have in and to the property or estate of the other at death, all right and interest to take against the other's will or under the intestate laws, and each and every other claim of right, title or interest he or she has or may ever have against the other[.] . . .

(6) Each party hereby agrees that no support or alimony shall be payable to either party by the other.

(7) Each party further agrees that neither party shall maintain any form of insurance for the benefit of the other party. From the date of this agreement, neither party shall have any right or claim in any insurance policy of the other party. . . .

(11) The parties hereto shall and will at any time or times hereinafter make, execute and deliver any and all such further instruments and things as the other of such parties shall require for the purpose of giving full effect to these presents, and to the covenants and agreements thereof.

In early 1998, the State Department ruled that because the settlement agreement failed to specifically mention the waiver of all rights of entitlement under the Foreign Service Act, appellee was entitled to a share of appellant's monthly retirement benefits and to potential survivor benefits. Appellant instituted this suit against appellee, claiming that appellee had no right to any share of appellant's retirement benefits under the Foreign Service Act because of the aforementioned property settlement agreement. Alternatively, appellant claimed that at a luncheon in 1995, appellee had orally agreed to waive her share of retirement benefits and that he had relied on that promise in taking early retirement three years later in 1998. The trial court granted summary judgment in favor of appellee.

## II.

The Foreign Service Act was passed by Congress in 1980 as a measure to strengthen and improve the Foreign Service of the United States. S.REP. No. 96–913, at 1 (1980). One component of the Act is section 814, which confers upon former spouses of members of the Foreign Service a retirement annuity of up to fifty percent of the participant's annuity, depending on the length of the service and the marriage. See 22 U.S.C. § 4054. "The Committee believes that this provision is sorely needed to begin to balance some of the inequities inherent in the Foreign Service life and which have fallen disproportionately on spouses of Foreign Service employees." S.REP. No. 96–913, at 66–67. Recognizing that spouses of Foreign Service members could rarely establish their own independent careers or retirement pensions due to frequent transfers to various posts, Congress sought "to provide some protection for these individuals through the mechanism of the retirement system." Id.

22 U.S.C. § 4054(a)(1) provides, in relevant part, that "[u]nless otherwise expressly provided by any spousal agreement or court order under [§ 4060(b)(1) ],

a former spouse of a participant or former participant is entitled to an annuity if such former spouse was married to the participant for at least 10 years during service of the participant which is creditable under this chapter."[4] In the situation where such a spousal agreement exists, section 4060(b)(1) provides that the annuity should be divided "in accordance with that spousal agreement or court order, if and to the extent expressly provided for in the terms of that spousal agreement or court order." A "spousal agreement" is defined as "any written agreement" between a participant and his or her spouse or former spouse. 22 U.S.C. § 4044(11).[5]

### A.

■ Appellant's primary contention is that the trial court erred in ruling that the settlement agreement did not effectively waive appellee's rights to retirement benefits under the Act. Our review of the trial court's order granting summary judgment is de novo. *Washington Props., Inc. v. Chin, Inc.,* 760 A.2d 546, 548 (D.C.2000). To this end, "[s]ummary judgment is ap-

propriate where a contract is unambiguous since, absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Id.* However, "[a] contract is not ambiguous merely because the parties disagree over its meaning[.]" *Id.*

■ At bottom, the question is whether the settlement agreement "otherwise expressly provided" to deprive the appellee of her annuity under the Act, 22 U.S.C. § 4054(a)(1), or, put another way, whether it "expressly provided for" a different payment than to the ex-spouse, 22 U.S.C. § 4060(b)(1). The settlement agreement here made no express mention of rights under the Act. The issue then is whether anything less specific will suffice, at least when the agreement is entered into subsequent to the passage of the Act.[6]

Case law on the subject is surprisingly limited. We are only cited to three cases from the intermediate Virginia appellate court and we have found no others. The most recent is *Allsbury v. Allsbury,* 33

---

4. The annuity right is thus vested directly in the ex-spouse. It becomes payable at the same time as the participant becomes entitled to receive his or her retirement annuity, *see* 22 U.S.C. § 4054(a)(1), and the amount of the participant's annuity is reduced by the amount of the annuity payable to the ex-spouse, *id.* § 4054(a)(5). Therefore, when the ex-spouse "waives" her rights to her own annuity, the effect is to increase the participant's annuity in that same amount. It is only in this sense that it can loosely be said that the ex-wife is receiving a "share" of the ex-husband's "benefits." Other sections provide for a survivor annuity for an ex-spouse upon the death of the participant. *See, e.g., id.* § 4054(b).

5. See also 22 C.F.R. §§ 19.2(t), 19.7–4(b) (spousal agreement must either be authenticated by a court or notarized). A "court order" is defined by the Act as "any court decree of divorce or annulment, or any court

order or court approved property settlement agreement incident to any court decree of divorce or annulment." 22 U.S.C. § 4044(4).

6. In *Williams v. Williams,* 472 A.2d 896 (D.C. 1984), a property settlement agreement had been entered into prior to passage of the Act and, of course, contained no explicit reference thereto. We held that the wife was entitled to the retirement benefits created by the Act because the property agreement only waived rights existing at the time of the execution of the agreement. In *Wilkinson v. Wilkinson,* 785 F.Supp. 1037 (D.D.C.1992), the court followed *Williams* in rejecting the argument that "general waiver provisions" in a pre-Act settlement agreement effectively waived the ex-spouse's rights under the Act, although the agreement there contained provisions relinquishing any right to the earnings or property of the other and any right "arising out of or by virtue of the marital relation of the parties."

Va.App. 385, 533 S.E.2d 639 (2000). The court there held that the property settlement agreement effectively waived the provision of the Act that terminated an ex-spouse's rights to an annuity upon remarriage under the age of 60. The agreement dealt with rights under the Act at great length and with specificity. It created a formula to derive the ex-wife's percentage share and agreed to this entitlement regardless of the ex-wife's marital status.

Noting this comprehensive coverage of the subject in the agreement before it, the *Allsbury* court contrasted its prior holding in *Wilson v. Collins*, 27 Va.App. 411, 499 S.E.2d 560 (1998). The property settlement agreement there also referred to the husband's retirement rights but far more sparsely: "the Wife shall receive fifty percent (50%) of any annuity that the Husband shall receive upon his retirement from the State Department[.]" The issue was whether this language overrode the "remarriage disqualifier" provision of the Act also involved in *Allsbury*. The court ruled that the provision in the agreement was insufficient to "expressly" alter the statutory limitation on the ex-spouse's annuity rights.

> [T]he intent of the parties to extend wife's statutory entitlement beyond the subsequent occurrence of her remarriage before the age of sixty can only, at most, be implied from the language. Because the intent of the parties to abrogate the effect of [the provision terminating the ex-spouse's retirement rights upon remarriage] is not manifest from the terms of their agreement, that code section applies to wife.

499 S.E.2d at 565.

In yet a third case in Virginia, *Nicholson v. Nicholson*, 21 Va.App. 231, 463 S.E.2d 334 (1995), the court was faced with the same issue now before us; viz., whether the wife expressly waived her rights to the retirement annuity in the property settlement agreement. The agreement in question contained a provision that each party had the right to dispose of any and all property now or in the future owned personally by him or her, without claim by the other. It contained a further provision that each party relinquished and released to the other "all rights and curtesy or dower that he or she may have in the property hereinafter acquired by either of them." The court held that the statutory rights under the Foreign Service Act could not be waived by such a general waiver or release of property rights. Nor was it sufficient that the preamble set forth the intention of the parties to resolve "all their property rights." The court did not necessarily rule out the possibility that a general release or waiver might be sufficient "if, from the terms of the agreement, the parties' intent to include pension or retirement benefits is clear and unambiguous[,]" 463 S.E.2d at 339, but it noted that the agreement there did not even mention retirement rights or pension benefits generally, much less refer to rights under the Act.

■ It is plain from this case law involving both pre-Act and post-Act property settlement agreements that the requirement that an agreement "otherwise expressly provide" is strictly construed.[7] Although the agreement here was entered into well after the passage of the Act, and indeed at a time when both parties were in fact active Foreign Service officers, no express mention whatsoever is made of the

---

7. Appellant cites us to *Warner v. United States*, 157 Ct.Cl. 1, 301 F.2d 327 (1962), where the court did not follow the literal language of a prior version of the Act in making an annuity adjustment based on "principles of equity and justice." Even assuming we could thus disregard federal law, we see no comparable situation here.

Act or the rights thereunder. Indeed, no express mention is even made of retirement and pension rights in general. Appellant argues that the waiver of what he terms as "expectancies" in the agreement could encompass such rights, but that word appears nowhere in the agreement.[8] Moreover, the argument relying on the settlement of "all property interests and all claims between or against each other," as stated in the preamble, and the release and relinquishment of all rights that either may have "in and to the property ... of the other" contained in paragraph 3, somewhat misconceives the nature of the ex-spouse's rights under the Act. The rights are directly granted to the spouse, see note 4, *supra,* and what the Act requires is that the agreement "expressly provide" that the statutory scheme not be controlling.

We conclude the trial court quite correctly ruled that, as a matter of law, the property settlement agreement did not affect the appellee's right to the retirement benefits provided her by the Act.

### B.

Appellant alternatively contends that the court erred in granting summary judgment on his promissory estoppel claim. Specifically, appellant alleges that appellee, during a lunch meeting in 1995, orally agreed to sign the required forms to waive her share of the retirement benefits and that in taking early retirement three years later, thereby losing income that he would have otherwise accumulated had he remained active, appellant was relying on that statement.[9] The trial court rejected this argument on the ground that even if such a statement was made, it lacked legal effect under the Act and related regulations. The issue then is whether federal law preempts appellant's common-law promissory estoppel claim based on the oral promise made during the lunch meeting.

"It is well established that pursuant to the Supremacy Clause, state laws that 'interfere with, or are contrary to' federal law are invalidated." *Goudreau v. Standard Fed. Sav. & Loan Ass'n,* 511 A.2d 386, 389 (D.C.1986) (citation omitted). Moreover,

[e]ven where Congress has not displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict is recognized in two circumstances: when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"

*Id.* (citations omitted). To this end, there is no distinction between a federal statute

---

8. Appellant refers to the waiver of rights in insurance policies and cites to a phrase in *Wilson v. Collins, supra,* analogizing the ex-spouse's rights under the Act as essentially "a type of insurance." We quite agree with the trial court's characterization of this language as simply a loose analogous description of the ex-spouse's rights under the Act and not one which the "insurance" provision of the Agreement would encompass. Appellant also cites to a portion of appellee's deposition where she suggests that she understood the agreement to dispose of "expectancies," but, even if relevant, we think that this is quite insuffi-

cient to meet the "express" demands of the Act. Likewise, any argument based on the specific performance aspect of paragraph 11 of the settlement agreement founders upon the absence of any express provision in the agreement upon which paragraph 11 could operate.

9. Appellee denies that she ever made such a statement, but in ruling on a grant of summary judgment, appellant's assertion must be taken as true. *Urban Masonry Corp. v. N & N Contractors, Inc.,* 676 A.2d 26, 30 (D.C.1996).

and a federal regulation, as both can preempt state law. *Id.*

As outlined above, a purpose behind the Act was to compensate ex-spouses for the lifestyle of marriage to a member of the Foreign Service and to provide them some protection through the retirement system. Part of this protection was to require that the Act's provisions control unless, in the case of voluntary adjustment, it is "otherwise expressly provided" by a spousal agreement, which the statute requires be in writing.[10] The clear intent is that the ex-spouse's rights are to be relinquished not casually but only by solemn and formal acts. To allow such provisions to be overridden by reliance simply on an alleged oral promise would "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Nicholson,* 463 S.E.2d at 338 ("When Congress enacted the provisions of the Foreign Service Act that established the right of a former spouse to a share of a foreign service retiree's annuity, Congress preempted the right of states to determine the property rights of a former spouse according to the state's respective family law principles."); *see also Hisquierdo v. Hisquierdo,* 439 U.S. 572, 590, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (statutes conferring retirement benefits to spouses of railroad workers preempt California's community property laws); *Aetna Life Ins. Co. v. Bayona,* 223

F.3d 1030, 1034 (9th Cir.2000) (federal statutes dealing with employee retirement benefits preempt common law theories, including promissory estoppel).[11] We are further convinced of this view by the sweeping nature of the anti-assignment clause contained in 22 U.S.C. § 4060(c), which provides that none of the moneys mentioned in the Act "shall be assignable either in law or in equity, except under subsections (a) or (b) of this section,[12] ... except as otherwise may be provided by *Federal* law." (Emphasis added).

For all of the foregoing reasons, the trial court order granting summary judgment in favor of the appellee must be and is hereby

*Affirmed.*

---

10. The implementing regulations impose further formalities. See note 5, *supra.*

11. However, as our holding in *Critchell v. Critchell,* 746 A.2d 282 (D.C.2000), indicates, not all state marital property law is preempted by ERISA, 29 U.S.C. § 1001 et seq. ERISA, unlike the Act here, bestows no direct rights on former spouses and specifically defers to state law on the determination of a former spouse's interest in her ex-spouse's pension. *See* 29 U.S.C. § 1056(d)(3)(B). We stated in *Critchell* that because the District's

relevant marital property law was compatible with that provision of ERISA, "we need not engage in a traditional pre-emption analysis." 746 A.2d at 284.

12. Subsection (a) says that rights can be assigned "on a form approved by the Secretary of the Treasury." Subsection (b) is the provision cited above that allows rights of ex-spouses to be determined in accordance with a spousal agreement or court order "if and to the extent expressly provided for" therein.