UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, McCullough and Senior Judge Haley
Argued at Fredericksburg, Virginia

MATTHEW T. BAILEY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0981-15-4            JUDGE STEPHEN R. McCULLOUGH
                                                    MARCH 22, 2016

MAUREEN M. BAILEY


               FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                              William T. Newman, Jr., Judge

            David D. Masterman (Carolé C. Krogmann; Jamel D. Rowe;
            Masterman Krogmann P.C., on briefs), for appellant.

            Jeff Evan Lowinger (Melissa L. Schefkind; New & Lowinger, P.C.,
            on brief), for appellee.


        Matthew T. Bailey assigns a number of errors in connection with the trial court's denial

of his motion to reduce his spousal support.  For the reasons noted below, we reverse and

remand.

                                    BACKGROUND

        Matthew and Maureen Bailey, whom we will refer to as husband and wife for the sake of

simplicity, were divorced in 2013.  Husband's spousal support obligations are governed by a

Separation and Property Settlement Agreement dated July 22, 2013.  The clause governing

spousal support provides in relevant part as follows:

            The Husband shall pay to the Wife as and for spousal
            support the sum of Twenty Two Thousand Five Hundred Dollars
            ($22,500.00) per month, beginning on the 1st day of June, 2013
            and continuing on the 1st day of every month thereafter for a
            period of 3 years (i.e., through the payment due May 1, 2016);

────────────────
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

thereafter, the Husband shall pay to the Wife as and for spousal support the sum of Twenty Thousand Dollars ($20,000.00) per month, beginning on the 1st day of June, 2016 and continuing on the 1st day of every month thereafter for a period of 12 years (i.e., through the payment due May 1, 2028), at which time the Husband's obligation to pay spousal support to the Wife shall forever terminate.

. . . .

The parties acknowledge and agree that the amount, but <u>not</u> the duration, of the Husband's spousal support obligation shall be subject to modification by a court of competent jurisdiction upon petition of either party in the event of a material change of circumstances in accordance with §§20-107.1 and 20-109 of the 1950 Code of Virginia, as amended. The parties agree that up to the first $80,000 of earned income for Wife shall not constitute a material change in circumstances warranting modification of spousal support herein.

(emphasis in original).

The Agreement also contained the following paragraph 10, titled "Private School

Tuition":

The Husband hereby agrees to be solely responsible for payment of the private school tuition for each of the parties' children who are enrolled in private school each year, through each child's graduation from high school, in an amount not to exceed $15,000 per child per year, for so long as the Husband's annual income does not fall below 80% of his 2012 income (i.e., below $912,000).

The court affirmed, ratified, and incorporated the parties' Agreement into the final decree

of divorce.

On February 2, 2015, husband filed a motion for the reduction of his spousal support.

Husband cited, among other things, a substantial reduction in his income as a ground for

modification.

At a hearing on the motion, husband testified that he has been an equity partner in his current firm since 2002, and was an equity partner in other firms before that. He specializes in intellectual property litigation.

In 2012, husband had earned approximately $1,040,000. In 2013, he earned approximately $990,000. In 2014, husband earned approximately $850,000. The firm projected husband's income for 2015 at $668,710. Both husband and wife agreed that his income fluctuated from year to year.

Husband knew, at the time he negotiated the Agreement with wife, that his billable hours were down and that he had just lost several clients, including his biggest client. Between 2013 and 2015, husband's law firm experienced a period of turmoil and change. A prospective merger with another firm about 18 months before the hearing was a source of division and turmoil within the firm. In addition, husband testified that the firm had litigated some cases on a contingency basis that did not bear fruit.

A previous merger with a California firm diluted profitability of husband's firm and led some partners to leave the firm. This development, husband testified, had not been expected when he negotiated the Agreement with the wife in 2013. Several entire practice areas had left the firm since 2013, including the firm's toxic torts practice and the firm's governmental contracts practice. These departures are expected to have a negative impact on firm profitability.

Husband acknowledged that his billable hours had dropped significantly in 2014 and 2015, but he stated that he was working hard to rebuild them. He explained that it was a challenging environment, particularly given the looming merger of his firm with a large international law firm. Husband explained that his firm reassessed his compensation in January of 2015, and the reevaluation resulted in fewer "units" attributed to husband. This, in turn, lowered his compensation.

An expert for wife testified that in several key areas upon which compensation is based, including working attorney's fees collected and origination or business development, husband had experienced significant drops. Over the past two years, husband experienced a 65% drop in working attorney's fees collected, a 96% drop in origination or business generation, and a similar 96% drop in billing responsibility.

At the conclusion of the hearing, the court denied husband's motion for modification. The court found Mr. Bailey's income for 2015 to be "approximately $700,000." In denying the motion, the court reasoned that there were times during the marriage that husband's compensation went up or down, and, therefore, it was something the parties contemplated. The court also cited the parties' provision that addressed husband's obligations with respect to the children's private school tuition, which showed that the parties contemplated that his income would go up or down. Because husband's drop in income "was something that could have been contemplated," the court found that it could not form the basis of modification under the parties' Agreement. The order entered by the court incorporated as its reasons for denying the motion the explanation that the court provided in the transcript.

ANALYSIS

On appeal, we review the evidence, and all reasonable inferences fairly deducible from it, in the light most favorable to the prevailing party below. Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992).

The court's authority to order a modification of husband's spousal support is controlled by the parties' Agreement. See Code § 20-109(C). "Support agreements that are voluntarily made by the parties are subject to the same rules of construction applicable to contracts generally." Goldin v. Goldin, 34 Va. App. 95, 107, 538 S.E.2d 326, 332 (2000). "When a judgment is based upon the construction or interpretation of a contract, an appellate court is not

- 4 -

bound by the trial court's construction of the contract's provisions." Nicholson v. Nicholson, 21 Va. App. 231, 239, 463 S.E.2d 334, 338 (1995). Moreover, "on appeal if all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this [C]ourt." Dziarnowski v. Dziarnowski, 14 Va. App. 758, 762, 418 S.E.2d 724, 726 (1992) (quoting Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987)). Accordingly, "[t]he trial court's interpretation of [a support agreement] is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (*en banc*).

"In reviewing the agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the *entire* instrument, giving full effect to the words the parties actually used." Rutledge v. Rutledge, 45 Va. App. 56, 64-65, 608 S.E.2d 504, 508 (2005) (quoting Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986)). "According to the rules of construction, 'courts cannot read into contracts language which will add to or take away the meaning of words already contained therein.'" Id. at 64, 608 S.E.2d at 508 (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)).

The key text of the Agreement provides that "Husband's spousal support obligation shall be subject to modification by a court of competent jurisdiction upon petition of either party in the event of a material change of circumstances in accordance with §§20-107.l and 20-109 of the 1950 Code of Virginia, as amended." The Agreement does not specify whether Code § 20-109(A) or Code § 20-109(B) supplies the standard to assess a request for a reduction in spousal support based on a material change in circumstances. Code § 20-109(A) provides in relevant part that "[u]pon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue,

whether previously or hereafter awarded, as the circumstances may make proper." Code

§ 20-109(B) provides that

> [t]he court may consider a modification of an award of spousal
> support for a defined duration upon petition of either party filed
> within the time covered by the duration of the award. Upon
> consideration of the factors set forth in subsection E of § 20-107.1,
> the court may increase, decrease or terminate the amount or
> duration of the award upon finding that (i) there has been a
> material change in the circumstances of the parties, not reasonably
> in the contemplation of the parties when the award was made . . . .

The court construed the Agreement based on Code § 20-109(B).

Code § 20-109(B) addresses modifications of an "award." Initially, husband contends

that Code § 20-109(B) does not apply, because the parties' Agreement is not an "award." Code

§ 20-107.1 mentions an "award" of spousal support, which the court makes after considering the

factors set forth in Code § 20-107.1(E), whereas Code § 20-109(C) speaks of a "decree or order

directing the payment of support and maintenance for the spouse" based on an agreement

between the parties. Code § 20-109(C) does not use the term "award." Therefore, we agree with

husband that the spousal support provisions of the Agreement do not constitute an "award." We

recognize that the term "award" in the colloquial sense would encompass any order of the court

directing the payment of money. And the court here did "award" spousal support in that

colloquial sense. Because the Code uses "award" in a more technical sense, however, and treats

an "award" differently from a "decree or order" when there is an agreement between the parties,

we conclude that the spousal support payments under the Agreement are not an "award" as the

Code employs that phrase. That, however, does not end the inquiry.

The Agreement does not specify whether subsection (A) or (B) should govern a request

for modification. Although the two standards are similar, they are not identical. Code

§ 20-109(B) applies to the "modification of an award of spousal support for a defined duration"

and among other things requires that the change in circumstances was "not reasonably in the

contemplation of the parties when the award was made." This latter phrase does not appear in Code § 20-109(A). The parties' Agreement calls for spousal support of a defined duration. Code § 20-109(B) governs modification of defined duration awards. With no clause in the Agreement specifying whether subsection (A) or (B) applies, subsection (B) is a better fit for the defined duration award under the Agreement.[1]

The parties' failure to specify exact income thresholds that would constitute a material change in circumstances does not mean that the material change of circumstances clause should be effectively written out of the Agreement, as wife suggests. The Agreement allows husband to petition for a modification of his spousal support obligation if there is a material change in circumstances. A diminution in income of nearly 40% clearly qualifies as a material change in circumstances. The question then becomes whether such a change was "not reasonably in the contemplation of the parties."

The court reasoned that husband's income had fluctuated throughout the marriage and, therefore, husband's dramatic decrease in income "was something that could have been contemplated." We think this construction of the Agreement is far too restrictive.

The evidence establishes that husband's income fluctuated throughout the marriage. The evidence also established, however, that husband faced circumstances that were not in the contemplation of the parties at the time they negotiated the Agreement. First, the environment at

---

[1] There is an additional interpretive conundrum. The Agreement references Code § 20-107.1. It is not clear whether this reference calls for the trial court to consider the factors contained in Code § 20-107.1(E) in determining whether to modify spousal support, or whether that reference simply makes clear that the trial court may modify the agreement, i.e., Code § 20-107.1(B) provides that maintenance and support "shall be subject to the provisions of § 20-109" and, in turn, Code § 20-109 addresses modification of support. In other words, the Agreement may have mentioned Code § 20-107.1 for the sake of completeness, or it may have mentioned Code § 20-107.1 because the parties intended for the trial court to apply the factors found in Code § 20-107.1(E) when considering a request for modification of spousal support. The parties may turn out to agree on how to read the reference to Code § 20-107.1 in the Agreement, and in any event, they do not ask us to address it, so we do not resolve this issue.

his firm imposed a new and unforeseen series of challenges. The firm he worked for had attempted a merger, but disagreement within the firm over the merger had proved unexpectedly problematic. This led to an exodus of partners.

The parties knew at the time they negotiated the Agreement that husband had lost a major client. However, they did not know whether husband would be able to win new clients to compensate for the loss of the major client who had left. Husband was working to gain additional clients. Those efforts were made far more difficult due to the turmoil and uncertainty within the firm from the previous merger as well as the uncertainty created by the upcoming merger with a large international firm. In addition, husband's firm reevaluated his compensation after he entered into the Agreement with wife, resulting in a loss of "units," upon which husband's compensation was, in part, based.

Wife's own expert witness testified that, with respect to key metrics of compensation, husband had experienced significant drops since the parties negotiated the Agreement. His working attorney's fees collected dropped by 65% over the past two years. Under the origination category, husband experienced a drop of 96% over the past two years, and for billing responsibility he also experienced a drop of 96% over the same period. Such significant developments are well beyond ordinary fluctuations in income.

Although not dispositive, other clauses yield some clues concerning the parties' intent. Under the Agreement, wife's earnings do not constitute a material change of circumstances until she earns in excess of $80,000 per year. This stricture suggests that a drop in husband's income of almost six times $80,000 *would* constitute a material change in circumstances. Moreover, paragraph 10 absolves husband of the obligation to pay his children's private school tuition if his income dropped to $912,000. A drop of several additional hundred thousand dollars below $912,000 is, of course, even more significant.

Husband's near 40% drop in income since the parties negotiated their Agreement constituted "a material change in the circumstances of the parties, not reasonably in the contemplation of the parties when the award was made."  Code § 20-109(B).  The next step is for the trial court to consider any further relevant evidence[2] and to determine to what extent, if any, the spousal support should be modified.  See Collier v.  Collier, 2 Va. App. 125, 129, 341 S.E.2d 827, 829 (1986).

## CONCLUSION

We reverse the judgment below and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[2] At a minimum, more up to date figures concerning husband's income will be available. At the time of the hearing, husband's income was *projected* to be approximately $700,000.