COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Elder and Kloch[*]
Argued at Alexandria, Virginia


JERRY P. WILSON
                                              OPINION BY
v.        Record No. 2124-97-4        JUDGE LARRY G. ELDER
                                             MAY 26, 1998
MARILYN H. COLLINS (FORMERLY WILSON)


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Michael P. McWeeny, Judge

            Beth A. Bittel (Law Offices of Beth A.
            Bittel, on briefs), for appellant.

            Gwendolyn Jo M. Carlberg (Timothy Bryan
            Beason; Law Offices of Gwendolyn Jo M.
            Carlberg, on brief), for appellee.


     Both parties appeal from a decree of the trial court

declaring and enforcing their rights under a property settlement

agreement that was incorporated into their earlier divorce

decree.  Jerry P. Wilson ("husband") contends the trial court

erred by (1) ordering him to pay fifty percent of his retirement

annuity under the Foreign Service Act of 1980 to Marilyn H.

Collins ("wife"), (2) prohibiting him from making any future

elections of survivor benefits against his retirement annuity for

his current wife, and (3) finding him in civil contempt for

failing to provide wife with a copy of a life insurance policy.

Wife contends the trial court erred by ruling (1) that husband

was not in contempt of court when he neglected to provide her

---

[*]Judge John E. Kloch took part in the consideration of this
case by designation pursuant to Code § 17-116.01.

with fifty percent of his retirement annuity following his retirement, (2) that wife's right under the parties' agreement to approve a life insurance policy obtained by husband was not enforceable by the contempt powers of the court, (3) that wife was entitled to only $750 in attorney fees as a sanction for husband's contempt, (4) that husband's election of a partial survivor benefit for his current wife prior to the commencement of his retirement annuity did not violate the parties' agreement, and (5) that wife was not entitled to interest at the judgment rate for all past due retirement payments owed to her by husband. For the reasons that follow, we reverse in part, vacate in part, and remand.

## I.

### FACTS

The parties married in 1959, had two sons, the youngest of whom was born on March 23, 1968, separated in 1978, and were divorced on January 19, 1983. Beginning in the 1960s, husband was employed by the Foreign Service of the United States Department of State.

On December 31, 1981, after the parties separated but before they were divorced, they entered into a property settlement agreement ("agreement"). The agreement contained the following provisions regarding wife's entitlement to husband's retirement annuity from the State Department and husband's obligation to provide life insurance for wife and the parties' children:

        9. <u>LIFE INSURANCE</u>. . . . When the youngest

2

child attains the age of twenty-three (23) years, the Husband agrees to keep in full force and effect, at his expense, and to designate the Wife as irrevocable beneficiary and the children as secondary beneficiaries, a life insurance policy as approved by the Wife, in the amount of $50,000.00.

 *     *     *     *     *     *     *

14.  RETIREMENT BENEFITS.  The parties agree that the Wife shall receive fifty percent (50%) of any annuity that the Husband shall receive upon his retirement from the State Department, and the Husband agrees to file all necessary forms with the Treasury Department of the U.S. Government in order to accomplish the above transfer of retirement benefits to the Wife, in accordance with the Foreign Service Act of 1980, 22 USC Sec. 4054 and 4060.

(underline in original).

On November 16, 1982, the parties executed an amendment of the agreement ("amendment").  The relevant portions of the amendment stated:

6.  Paragraph Fourteen (14) of the Agreement is hereby amended by labeling the existing Paragraph "A", and adding the following paragraph:

"14. A.  Same as existing Paragraph Fourteen (14) of the Agreement.

B.  The parties agree that if the Husband separates from the service prior to his qualifying for retirement benefits referred to in Paragraph 14A above, and, therefore, receives a lump-sum refund of his retirement contributions, the Wife shall receive fifty percent (50%) of any lump-sum amount that the Husband shall receive."

7.  The Agreement is further amended by the addition of the following paragraph:

"SURVIVOR BENEFITS.  The parties agree that

3

the Wife shall receive a survivor annuity in

> an amount equal to thirty-five percent (35%)
> of the Husband's retirement or full annuity."

(underline in original).

On January 19, 1983, the trial court entered a decree divorcing the parties. The trial court's decree expressly "affirmed, ratified, and incorporated" the provisions of both the agreement and the amendment.

On January 14, 1984, wife remarried. She was forty-five years old at the time of her remarriage. Husband remarried on February 26, 1983.

On March 23, 1991, the parties' youngest son turned twenty-three years old. Despite his contractual obligation, not until September 16, 1996, did husband obtain a life insurance policy that designated wife as the irrevocable beneficiary and the parties' children as secondary beneficiaries. In addition, husband never consulted wife regarding the policy he obtained, and she neither approved nor obtained a copy of the policy he selected.

On September 29, 1996, husband retired from the State Department. He neither informed wife of his retirement nor arranged for her to receive fifty percent of his monthly annuity payments. Husband's first payments from his annuity were issued to him on November 2, 1996. His gross benefit was $5,218.33 for September and October 1996, $5,050 for November 1996, and $5,085 every month thereafter.

On February 12, 1997, husband filed a bill of complaint for

5

declaratory judgment with the trial court. Husband requested the trial court to determine the rights of the parties in his retirement annuity under paragraph fourteen of the agreement and in the related survivor benefits under paragraph seven of the amendment.

On March 11, 1997, wife filed a verified petition for a rule to show cause and a motion to dismiss husband's bill of complaint. She requested the trial court to find husband in contempt for failing to pay her fifty percent of his retirement annuity as required by the parties' divorce decree. She asserted that her remarriage did not terminate her entitlement to husband's annuity. She also requested the trial court to find husband in contempt for failing to obtain a life insurance policy previously approved by her and to award her attorney fees as a sanction.

On April 1, 1997, the trial court entered an order for a rule to show cause against husband. The trial court subsequently consolidated husband's bill of complaint and wife's show cause proceeding.

After the parties submitted briefs explaining their respective positions, the trial court held hearings on July 3 and July 25, 1997. At the hearing on July 3, the trial court ruled on husband's bill of complaint for declaratory judgment and the issues in wife's petition related to her entitlement to husband's retirement annuity. The trial court found that the language of

paragraph fourteen was unambiguous and that wife was entitled fifty percent of husband's retirement annuity even though she had remarried in 1984. Although, under the Foreign Service Act of 1980, wife's remarriage disqualified her from claiming benefits directly from the State Department, the trial court reasoned that the "remarriage bar" of the Act did not apply to the parties' agreement. The court stated:

> The reference to the Foreign Service Act of 1980 is an acknowledgement of the existence of the Act, an acknowledgement of its language, an acknowledgement of where the benefits flow from, but I see nothing here which incorporates limitations which run contrary to the express statement that wife shall receive [fifty] percent of any annuity.

The trial court concluded that husband was obligated under the agreement to pay wife fifty percent of his retirement annuity and ordered him to pay wife $22,931.67, an amount equal to fifty percent of all retirement benefits he had received to date. The trial court then ruled that husband was barred from reducing the amount of his gross monthly annuity payment by subsequently increasing the amount of the survivor benefit for his current wife and that wife's remarriage barred her from receiving the survivor benefit set forth in paragraph seven of the amendment. The trial court also ruled that husband was not in contempt of court for failing to pay wife her share of his retirement annuity.

At the hearing on July 25, the trial court ruled that "there was civil contempt" when husband failed to obtain a life

7

insurance policy that complied with paragraph nine of the agreement after the parties' youngest son reached the age of twenty-three. However, the trial court found that "the vast majority" of husband's contempt had since been purged. Specifically, the court found that husband had obtained a policy that complied with the requirements of the agreement. The court concluded that wife's right to approve the insurance policy obtained by husband "was not enforceable as a contempt issue." The court stated: "What has not been done as of yet is to furnish a copy of that policy, which I think is implicit in the terms of the agreement." The court gave husband sixty days to purge his contempt by providing wife with a copy of the policy. The court also ordered him to pay $750 of wife's attorney fees as a sanction.

All of the trial court's rulings and findings were incorporated into a decree that was entered on August 4, 1997.

## II.

### RETIREMENT ANNUITY

Husband contends the trial court erred when it concluded that wife had any entitlement to his retirement annuity under the Foreign Service Act. He argues wife's remarriage at the age of forty-five disqualified her from receiving any portion of his annuity under the "remarriage clause" of 22 U.S.C. § 4054(a)(2) and that the parties did not expressly negate the effect of 22 U.S.C. § 4054(a)(2) in their agreement. As such, he argues the

trial court erred when it failed to apply 22 U.S.C. § 4054(a)(2) to the case at hand. We agree.

Generally, a former spouse who was married to a foreign service member for the requisite number of years is entitled to a share of the member's retirement annuity, regardless of the member's wishes. See 22 U.S.C. § 4054(a)(1). The United States Congress conferred this entitlement in 1981 after recognizing that, due to the frequent transfers of foreign service members from post to post, spouses of members rarely establish their own independent careers or retirement pensions. See Nicholson v. Nicholson, 21 Va. App. 231, 238 n.5, 463 S.E.2d 334, 338 n.5 (1995) (citing S.Rep. No. 96-913, at 67 (1980), reprinted in 1980 U.S.C.C.A.N. 4419, 4485). This entitlement essentially functions as a type of insurance for members' spouses to protect them against the risk that their marriages might dissolve after years of making the sacrifices inherent in being the spouse of a member. Under 22 U.S.C. § 4054(a)(1)(A), if the former spouse is married to a foreign service member throughout his or her creditable service, the former spouse is entitled to receive fifty percent of the member's retirement annuity. If the former spouse is divorced from the member prior to the end of his or her creditable service, the former spouse is entitled to a "pro rata share" of fifty percent of the member's annuity. 22 U.S.C. § 4054(a)(1)(B).

The statutory entitlement of a former spouse to a foreign

9

service member's retirement annuity under 22 U.S.C. § 4054 is not absolute. First, if a former spouse remarries "before becoming 60 years of age" prior to the commencement of the member's annuity, then the former spouse is "disqualified" from receiving any annuity. 22 U.S.C. § 4054(a)(2).[1] In addition, the Foreign Service Act of 1980 includes a mechanism by which a former spouse's statutory entitlement may be altered through either negotiation or adjudication. See 22 U.S.C. § 4060(b)(1)(A). Through either a "spousal agreement" or a "court order," the parties or a court may vary "any right" the former spouse has in the member's retirement annuity from those set forth in 22 U.S.C. § 4054(a). See 22 U.S.C. § 4060(b)(1)(A)(i); but see 22 U.S.C. § 4054(a)(4); see also Nicholson, 21 Va. App. at 238, 463 S.E.2d at 338. However, a spousal agreement or court order has the legal effect of altering a former spouse's entitlement under 22 U.S.C. § 4054(a) only "if and to the extent expressly provided for in the terms of that spousal agreement or court order." 22 U.S.C. § 4060(b)(1)(A) (emphasis added).[2] Put another way:

_____

[1] 22 U.S.C. § 4054(a)(2) states in full: "A former spouse shall not be qualified for an annuity under this subsection if before the commencement of that annuity the former spouse remarries before becoming 60 years of age." Both parties note that Congress subsequently lowered the age at which a former spouse may remarry and still preserve his or her right to the foreign service member's retirement annuity to age fifty-five. See 22 U.S.C. § 4068. This provision does not apply to this case because it covers only former spouses who remarried "on or after November 8, 1984." 22 U.S.C. § 4068. The record indicates that wife remarried on January 14, 1984.

[2] 22 U.S.C. § 4060(b)(1)(A) states in relevant part:

10

> In the Act, Congress provided that this statutory entitlement would control division of the foreign service pension "[u]nless otherwise expressly provided by any spousal agreement [or court order]."[3]

Wilkinson v. Wilkinson, 785 F.Supp. 1037, 1039 (D.D.C. 1992), aff'd, 986 F.2d 546 (D.C. Cir. 1993) (citation omitted).

In this case, wife's remarriage at the age of forty-five, more than twelve years prior to the commencement of husband's retirement annuity, disqualified her from any statutory entitlement she previously had in the annuity. See 22 U.S.C.

---

> In the case of any participant or annuitant who has a former spouse who is covered by a court order or who is a party to a spousal agreement--
>
> > (i) any right of the former spouse to any annuity under section 4054(a) of this title in connection with any retirement or disability annuity of the participant, and the amount of any such annuity;
>
> > *     *     *     *     *     *     *
>
> shall be determined in accordance with that spousal agreement or court order, if and to the extent expressly provided for in the terms of that spousal agreement or court order.

[3]We disagree with wife's argument that the act of entering into a spousal agreement preempts all of the "default provisions" of 22 U.S.C. § 4054. The language of 22 U.S.C. § 4060(b)(1)(A) is clear: a spousal agreement or court order negates the provisions of 22 U.S.C. § 4054(a) only "if and to the extent expressly provided for in the terms" of the agreement or order. Thus, unless the terms of a spousal agreement or court order expressly alter the respective rights of the parties under 22 U.S.C. § 4054(a), the provisions of that statute govern the parties' respective entitlements to the member's annuity.

§ 4054(a)(2). Thus, the sole issue in this case is whether the terms of paragraph fourteen of the agreement and paragraph seven of the amendment "expressly" altered the substance of wife's rights under 22 U.S.C. § 4054(a)(2). Cf. Nicholson, 21 Va. App. at 239-40, 463 S.E.2d at 338-39. If the provisions of the parties' agreement can be reasonably construed to "expressly" negate the disqualifying effect of remarriage before the age of sixty on wife's entitlement to husband's retirement annuity, then the trial court's judgment must be affirmed. See id. at 239, 463 S.E.2d at 338.

"When a judgment is based upon the construction or interpretation of a contract, an appellate court is not bound by the trial court's construction of the contract's provisions." Id. at 239, 463 S.E.2d at 338 (citing Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986)).

> A separation agreement . . . is a contract
> and must be construed as such. Where the
> agreement is plain and unambiguous in its
> terms, the rights of the parties are to be
> determined from the terms of the agreement
> and the court may not impose an obligation
> not found in the agreement itself.

Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994). In order to expressly alter a former spouse's rights in a retirement annuity under the Foreign Service Act of 1980, "[t]he intent of the parties or court to waive or vary this federal statutory right must be manifest from the 'express' terms of the agreement or decree." Nicholson, 21 Va. App. at 240, 463

12

S.E.2d at 339.

We hold that the language of paragraph fourteen of the agreement and paragraph seven of the amendment does not constitute an express negation of the "remarriage clause" of 22 U.S.C. § 4054(a)(2). The only issues expressly addressed in these paragraphs are (1) the percentage of wife's share of husband's annuity upon his retirement or earlier separation from the foreign service, (2) wife's entitlement to a separate "survivor annuity," and (3) husband's duty to perfect wife's entitlement by filing the required paperwork. Neither paragraph includes any reference to 22 U.S.C. § 4054(a)(2) or the issue of whether wife's entitlement to a share of husband's retirement annuity is contingent upon her remaining unmarried. Although each paragraph states that wife "shall receive" the enumerated benefits, the intent of the parties to extend wife's statutory entitlement beyond the subsequent occurrence of her remarriage before the age of sixty can only, at most, be implied from this language. Because the intent of the parties to abrogate the effect of 22 U.S.C. § 4054(a)(2) is not manifest from the terms of their agreement, that code section applies to wife. See id.

We disagree with wife's argument that paragraph fourteen was intended to obligate husband to personally pay her fifty percent of his retirement annuity regardless of her statutory entitlement. This argument ignores the legal backdrop on which the parties negotiated and drafted paragraph fourteen. At the

13

time the parties negotiated their agreement, wife <u>was already</u> <u>entitled</u> to a pro rata share of husband's annuity under 22 U.S.C. § 4054(a)(1)(B). The direct references to 22 U.S.C. § 4054 and 22 U.S.C. § 4060 in the paragraph indicate that the parties were aware of wife's existing statutory entitlement and that they intended to alter it by expressly increasing wife's share from a pro rata portion of fifty percent of husband's annuity to fifty percent. We would contradict the clear intent of paragraph fourteen were we to construe it as creating a <u>new</u> right for wife in the income stream husband received from his retirement annuity. Instead, the paragraph's language indicates that it was intended only to modify wife's existing statutory rights under the Foreign Service Act.

Based on our construction of the parties' agreement, we hold that the trial court erred when it concluded that wife was entitled to fifty percent of husband's retirement annuity. The restriction on wife's qualification for a share of husband's annuity contained in 22 U.S.C. § 4054(a)(2) was not expressly altered in their agreement. Therefore, wife's remarriage in 1984 at the age of forty-five and prior to the commencement of husband's benefits rendered her "not qualified for an annuity" under 22 U.S.C. § 4054(a)(2). Moreover, because wife no longer has any rights in husband's retirement annuity, the trial court also erred when it concluded that the agreement restricted husband from making future deductions from his annuity, including

14

additional survivor benefit elections, that would have the effect of reducing the amount of his monthly payments.

In light of our conclusion that wife's remarriage terminated her entitlement to husband's retirement annuity, we need not address wife's arguments regarding (1) husband's pre-retirement election of a partial survivor benefit for his current wife, (2) husband's alleged contempt for failing to pay her any portion of his annuity prior to the show cause proceeding, and (3) the trial court's refusal to award her interest at the judgment rate on the past due retirement payments allegedly owed to her by husband.

## III.

### LIFE INSURANCE POLICY

Husband contends the trial court erred when it found him in contempt for failing to provide wife with a copy of the life insurance policy he obtained pursuant to paragraph nine of the agreement. Wife contends the trial court erred when it concluded that her right under paragraph nine to approve the life insurance policy obtained by husband was not enforceable by the contempt power of the court. We agree with both contentions.

Under Code § 20-109.1, a trial court can enforce the provisions of a separation agreement that have been incorporated into a divorce decree "in the same manner as any provision of such decree." As such, the incorporated provisions of a separation agreement are enforceable by the contempt power of the court. Rodriquez v. Rodriquez, 1 Va. App. 87, 90, 334 S.E.2d

15

595, 597 (1985) (citing Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 866-67 (1975)).  A person is in "contempt" of a court order only if it is shown that he or she has violated its express terms.  See Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977).  "'[T]he process for contempt lies for disobedience of what is decreed, not for what may be decreed.'"  Id. (quoting Taliaferro v. Horde's Adm'r, 22 Va. (1 Rand.) 242, 247 (1822)).

> "[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied."

Id. (citation omitted).  If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him or her by a court's decree, the alleged contemnor's actions do not constitute contempt.  Id. at 10-11, 235 S.E.2d at 309.

We hold that the trial court erred when it concluded, for the reason stated, that husband was in contempt of the parties' divorce decree.  The divorce decree incorporated paragraph nine of the parties' agreement, which required husband "to keep in full force and effect" a life insurance policy with enumerated terms "as approved by the Wife."  The trial court concluded that husband was in contempt of paragraph nine because he had not provided wife with a copy of the life insurance policy he had obtained.  It stated:  "What has not been done as of yet is to furnish a copy of that policy, which I think is implicit in the terms of the agreement."  (Emphasis added).  As noted by the

16

trial court, the duty upon husband to provide wife with a copy of the insurance policy can be, at most, implied from the language of paragraph nine. The express duty imposed by paragraph nine upon husband was to obtain wife's approval of the life insurance policy he selected. Wife's approval of the policy can be obtained in a variety of ways, including sending her a copy for her review. Because sending a copy of the life insurance policy was not a clearly defined duty imposed upon husband by the agreement and the decree, husband's failure to do so could not constitute contempt. Cf. id.

We also hold that the trial court erred when it concluded that wife's right under the decree to approve the life insurance policy selected by husband was "not enforceable as a contempt issue." The express terms of paragraph nine required husband to procure and maintain a life insurance policy of which wife "approved." Although it may be difficult to imagine how a life insurance policy that complied with the requirements of paragraph nine could be reasonably disapproved by wife, husband nonetheless has a clearly defined duty to obtain her approval of the policy he selected. Because the parties' divorce decree expressly required husband to obtain wife's approval of the life insurance policy in question, it was proper for wife to seek enforcement of this provision in a contempt proceeding.[4]

_____

[4]We also note that, as a sanction for his civil contempt, the trial court ordered husband to provide wife with a copy of the life insurance policy within sixty days of its order. Although the trial court could not hold husband in contempt for

17

IV.

ATTORNEY FEES

Based on our conclusion that the trial court erred when it found husband in contempt of the divorce decree, we vacate its order awarding wife $750 in attorney fees as a sanction. On remand, the trial court may reconsider the issue of attorney fees if it finds husband in contempt and deems such an award to be an appropriate sanction.

For the foregoing reasons, we reverse the trial court's orders (1) directing husband to pay wife fifty percent of his past and future retirement annuity, (2) requiring him to make related arrangements with the State Department and tax authorities, (3) restricting him from making future deductions from his retirement annuity, and (4) finding him in civil contempt for violating paragraph nine of the parties' agreement by failing to provide wife with a copy of the life insurance policy. We vacate the contempt sanctions imposed by the trial court and remand this case to the trial court for further contempt proceedings consistent with this opinion.

Based on the circumstances of this case, we deny wife's

violating the divorce decree based upon his failure to provide wife with a copy of the policy, a trial court would be within its discretion to order husband to provide wife with a copy of the policy as a sanction for his previous failure to obtain her approval. "The punishment in a civil contempt proceeding 'is adapted to what is necessary to afford the injured party remedial relief for the injury or damage done by the violation of [the trial court's order]." Rainey v. City of Norfolk, 14 Va. App. 968, 974, 421 S.E.2d 210, 214 (1992) (citation omitted).

18

request for an award of attorney fees and costs related to this appeal.

<u>Reversed in part,
vacated in part,
and remanded</u>.
