COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Frank
Argued at Alexandria, Virginia


THOMAS C. ALLSBURY
                                            OPINION BY
v.    Record No. 2061-99-4        JUDGE ROBERT P. FRANK
                                         SEPTEMBER 5, 2000
BETTINA ALLSBURY, N/K/A
 BETTINA ROBINSON


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 J. Howe Brown, Judge Designate
                     Dennis Smith, Judge

          John S. Petrillo (Schwartz & Ellis, Ltd., on
          brief), for appellant.

          Susan Massie Hicks (Steve W. Grist; Hicks &
          Havrilak, P.C., on brief), for appellee.


     Thomas C. Allsbury (husband) appeals an order of the trial

court holding that Bettina Allsbury's (wife) share of his State

Department pension did not terminate upon her remarriage prior

to the age of fifty-five.  On appeal, husband contends 22 U.S.C.

§ 4054 disqualifies wife from receiving a share of the benefits

because she remarried prior to attaining the age of fifty-five.

Wife cross-appeals, contending the trial court erred in not

awarding her attorney's fees when she expended attorney's fees

in enforcing the Property Settlement Agreement.  We hold that

the trial court did not err and affirm the trial court's

judgment.

## I.  BACKGROUND

The parties married on July 18, 1987, and were divorced by a final decree of the Fairfax County Circuit Court, which was entered on April 3, 1998.  Before and during the majority of the years the parties were married, husband was employed by the United States State Department and was entitled to retirement benefits under the Foreign Service Retirement & Disability System ("FSRDS").

On December 29, 1997, the parties entered into a Property Settlement Agreement ("Agreement"), which was affirmed, ratified, and incorporated into their final decree of divorce. After the entry of the parties' final decree of divorce, wife remarried.  She was under fifty-five years of age at the time of her remarriage.

Paragraph 13(C)of the Agreement provides, in part:

> The Husband, Thomas C. Allsbury, is entitled to certain benefits under the Foreign Service Retirement and Disability System ("FSRDS"), 22 U.S.C.A. § 4044 et seq.  The Wife, Bettina Allsbury, shall receive fifty-percent (50%) of the marital portion of the Husband's FSRDS annuity or lump-sum credit; such payments shall be paid directly from the FSRDS if, as and when received by the Husband.  The marital portion shall be defined as that portion of the Husband's FSRDS retirement benefits accrued by Husband from the date of the parties' marriage through the date of the Husband's termination of foreign service employment, so that the Wife's portion is:

$$\frac{\text{Creditable months of FSRDS service from date of marriage to date of termination of foreign service employment}}{\text{Total creditable months of FSRDS service}} \times 50\% \quad \begin{array}{l}\text{(Adjusted FSRDS} \\ \text{monthly pension} \\ \text{or lump-sum} \\ \text{annuity)}\end{array}$$

Paragraph 13(D) of the Agreement provides:

> The Husband agrees that the Wife shall be entitled to the foregoing FSRDS annuity or lump-sum payment regardless of her marital status to the extent allowable under federal law.  Husband agrees that if he remarries, these benefits will be in no way diminished.

Paragraph 13(F) of the Agreement provides:

> The Husband agrees that he will not merge his benefits under the FSRDS with any other pension, nor will he take any action so as to defeat or reduce Wife's benefits. Husband shall indemnify the Wife against any breach by him hereof, and agrees to hold her harmless against such breach.  Thus, the payments contemplated herein shall be made to the Wife by the Husband if the Husband takes any action to reduce, merge or defeat Wife's interest in his FSRDS pension, at the same rate and amount which would have been paid to Wife in absence of such a breach.

Wife, by counsel, noticed husband for a hearing on March 12, 1999, for the entry of a Qualified Domestic Relations Order to divide the aforementioned retirement benefits.  The hearing took place on April 2, 1999.  Husband objected to entry of the Qualified Domestic Relations Order.

The trial court ruled that, as a matter of law, the language of the parties' Agreement was sufficient to waive the federal law that would have disqualified wife, upon her

remarriage before the age of fifty-five, from receiving a portion of husband's foreign service retirement benefits.

Thereafter, wife filed a motion for attorney's fees. The trial court denied the motion on July 16, 1999, on the ground that the court was interpreting the Agreement, not enforcing it, and that husband's position on the interpretation was reasonable.

## II.  ANALYSIS

Husband contends that the phrase, "to the extent allowable under federal law," required the trial court to terminate wife's entitlement to pension benefits because federal law would terminate said benefits upon her remarriage before the age of fifty-five.  Further, husband contends that paragraph 13(D) of the Agreement does not expressly manifest an intention to waive federal law that would otherwise disqualify wife from receiving any portion of husband's retirement benefits.

The FSRDS provides, "A former spouse shall not be qualified for an annuity under this subsection if before the commencement of that annuity the former spouse remarries before becoming 60 years of age."[1]  22 U.S.C. § 4054(a)(2).  This provision is frequently referred to as the "marriage disqualifier."  However, the FSRDS establishes that the parties may vary the amount of the Foreign Service Retirement benefits payable to a former

---

[1] As of January 1, 1987, Congress reduced the marriage disqualifier to fifty-five years of age.  See 22 U.S.C. § 4068.

spouse when "expressly provided by any spousal agreement or court order."  22 U.S.C. § 4054(a)(1).  Furthermore, the FSRDS provides that a former spouse's entitlement to any annuity or to any lump-sum credit "shall be determined in accordance with that spousal agreement or court order, if and to the extent expressly provided for in the terms of that spousal agreement or court order."  22 U.S.C. § 4060(b)(1)(A).  The FSRDS allows the parties to expressly agree to vary a former spouse's entitlement to a share of an annuitant's Foreign Service Retirement benefits.

The narrow issue in this case is whether paragraph 13(D) of the Agreement waives the FSRDS's "marriage disqualifier" provision.

Husband correctly notes that a spousal agreement or court order has the legal effect of altering a former spouse's entitlement under 22 U.S.C. § 4054 only "if and to the extent expressly provided for in the terms of that spousal agreement or court order."  Id.  Husband contends the Agreement does not alter wife's entitlement and explicitly states that her entitlement is governed, and specifically precluded, by federal law.  As federal law does not permit a former spouse to receive retirement benefits should that spouse remarry before the age of fifty-five, husband concludes the phrase in the parties' Agreement "to the extent allowable under federal law" precludes

wife from receiving benefits upon her remarriage before the age
of fifty-five.

"Property settlement and support agreements are subject to
the same rules of construction and interpretation applicable to
contracts generally."  Fry v. Schwarting, 4 Va. App. 173, 180,
355 S.E.2d 342, 346 (1987) (citation omitted).  When the sole
issue is the meaning and effect of the terms of the contract,
the issue "is a question of law which can readily be ascertained
by this court."  Id. (citation omitted).

> [B]ecause a separation agreement is a
> contract and must be construed as
> such . . . the intent of the parties as
> expressed in the contract controls.  Where
> the agreement is plain and unambiguous in
> its terms, the rights of the parties are to
> be determined from the terms of the
> agreement.

Gayler v. Gayler, 20 Va. App. 83, 86, 455 S.E.2d 278, 280 (1995)
(citations omitted).  An ambiguity exists when language admits
"of being understood in more than one way, or of referring to
two or more things at the same time."  Berry v. Klinger, 225 Va.
201, 207, 300 S.E.2d 792, 796 (1983) (citation omitted).

> The court must give effect to all of
> the language of a contract if its parts can
> be read together without conflict.  Where
> possible, meaning must be given to every
> clause.  The contract must be read as a
> single document.  Its meaning is to be
> gathered from all its associated parts
> assembled as the unitary expression of the
> agreement of the parties.  However
> inartfully it may have been drawn, the court

> cannot make a new contract for the parties,
> but must construe its language as written.

Id. at 208, 300 S.E.2d at 796 (citation omitted).

Husband cites Wilson v. Collins, 27 Va. App. 411, 499 S.E.2d 560 (1998), to support his position. The issue in Wilson is the same as we address in the instant case. In Wilson, we found no waiver of the "marriage disqualifier":

> We hold that the language of paragraph fourteen of the agreement and paragraph seven of the amendment does not constitute an express negation of the "remarriage clause" of 22 U.S.C. § 4054(a)(2). The only issues expressly addressed in these paragraphs are (1) the percentage of wife's share of husband's annuity upon his retirement or earlier separation from the foreign service, (2) wife's entitlement to a separate "survivor annuity," and (3) husband's duty to perfect wife's entitlement by filing the required paperwork. Neither paragraph includes any reference to 22 U.S.C. § 4054(a)(2) or the issue of whether wife's entitlement to a share of husband's retirement annuity is contingent upon her remaining unmarried. Although each paragraph states that wife "shall receive" the enumerated benefits, the intent of the parties to extend wife's statutory entitlement beyond the subsequent occurrence of her remarriage before the age of sixty can only, at most, be implied from this language. Because the intent of the parties to abrogate the effect of 22 U.S.C. § 4054(a)(2) is not manifest from the terms of their agreement, that code section applies to wife.

Id. at 422, 499 S.E.2d at 565 (citation omitted).

Unlike Wilson, the parties in this case created a comprehensive Agreement that ensured wife her share of

retirement benefits. They created a formula to derive wife's percentage share. They agreed to this entitlement regardless of wife's marital status. They addressed every situation where husband might attempt to defeat or reduce wife's benefits. Husband agreed to indemnify the wife if he took such action. Reading the Agreement as a whole, it is obvious that the parties agreed for wife to receive the pension benefits no matter what occurred, including remarriage.

Husband's argument that the phrase, "to the extent allowable under federal law," defeats the benefit is repugnant to the scheme of the Agreement. At oral argument, husband contended the words "marital status" referred to wife's present marital status, not her status upon remarriage. We find no merit in the position. Further, this argument is inconsistent with the argument offered in husband's brief.

We are obligated to interpret the phrase, "to the extent allowable under federal law," to be consistent with the entire Agreement. We, therefore, conclude that the phrase does not modify "marital status" but means to the extent the parties can waive the marriage disqualifier provision of federal law.

We, therefore, conclude, pursuant to federal law, the parties expressly waived the marriage disqualifier.

## III.  ATTORNEY'S FEES

Wife contends that because she was forced to enforce the terms of the Agreement, the trial court was obligated to award attorney fees under § 25(C) of the Agreement, which states:

> Should a party breach any of the provisions of this agreement, such party shall be liable to the other party for all of his or her reasonable legal fees and all reasonable costs necessary to enforce this agreement, and if any court proceedings arise from any alleged breach, the prevailing party shall be entitled to have the other party pay his or her reasonable legal fees and all reasonable costs.

Yet, Section 25(D) of the Agreement states that where the parties cannot agree on disputed matters, the trial court has the power to award counsel fees and costs against a party who the court finds acted unreasonably.  The trial court, in denying an award of attorney's fees, found husband's action reasonable in challenging the waiver of the marriage disqualifer.

An award of attorney's fees rests within the sound discretion of the trial court.  See Coady v. Strategic Resources, Inc., 258 Va. 12, 18, 515 S.E.2d 273, 276 (1999).

We find the trial court did not abuse its discretion in refusing to award wife her attorney's fees.

For these reasons, we affirm the judgment of the trial court.

Affirmed.