COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and McClanahan
Argued at Chesapeake, Virginia


WALTER THOMAS GOLEMBIEWSKI
                                              MEMORANDUM OPINION* BY
v.        Record No. 2993-02-1          JUDGE ELIZABETH A. McCLANAHAN
                                                  OCTOBER 7, 2003
GAE SUSAN GOLEMBIEWSKI


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          Frederick B. Lowe, Judge

          Lawrence D. Diehl for appellant.

          Jerrold G. Weinberg (Michael L. Donner, Sr.; Weinberg & Stein,
          on brief), for appellee.


     Walter Thomas Golembiewski (husband) appeals a decision of the trial court that he and

Gae Susan Golembiewski (wife) waived equitable distribution of their jointly owned property in

a premarital agreement (agreement), which the trial court incorporated into a final decree of

divorce.[1]  The parties questioned whether parol evidence should have been admitted to determine

the parties' intent at the time the contract was drafted.  Both parties seek an award of attorneys'

fees and costs related to this proceeding.  For the reasons that follow, we reverse the trial court

and remand on the application of equitable distribution to the parties' jointly owned property,

affirm with respect to the exclusion of parol evidence, and decline to award attorneys' fees and

costs to either party.

---

     * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

     [1] The terms of the agreement provide that it is to be interpreted under Pennsylvania law.
Since neither party raised an issue as to governing law, and since the parties argued the case
under Virginia legal principles, any objection to the application of Virginia law is deemed
waived.  Rule 5A:18.

## I. Background

On July 10, 1984, prior to their marriage on August 5, 1984, husband and wife entered into a premarital agreement. On May 10, 2000, wife filed a bill of complaint for divorce, seeking "remedies and relief . . . in accordance with Virginia Code Section 20-107.3." Code § 20-107.3 governs legal title as to property of divorcing parties. Husband filed a demurrer and motion to dismiss on May 23, 2000, and an answer and cross-bill on June 9, 2000. In his cross-bill, husband also asked the court to "adjudicate the remedies provided by § 20-107.3." On June 14, 2000, wife filed a motion to dismiss cross-bill and an answer to cross-bill.

On March 12, 2001, upon motion by wife, the chancellor entered a decree affirming, ratifying and incorporating the premarital agreement into the divorce proceeding pursuant to Code § 20-109.1. Subsequently, the chancellor referred the case to a commissioner in chancery (commissioner), who held a pretrial conference on January 10, 2002.

At the pretrial conference, the parties presented argument on whether the terms contained in paragraphs 2, 3, and 7 of the agreement allow for equitable distribution of jointly titled property, and whether the parol evidence rule should apply. Husband contended that paragraph 2 controls the distribution of property placed in joint tenancy to the exclusion of paragraph 7. Wife contended that paragraph 7 provides a blanket waiver of equitable distribution for all property upon divorce, regardless of how title in the property is held. Paragraph 2 of the agreement states in pertinent part:

> Each party shall separately retain all of his or her own property whether now owned or hereafter acquired . . . with the same effect as if no marriage had been consummated between them; provided, however, nothing in this paragraph shall prevent either party in the future from voluntarily placing real or personal property in joint title, or in the name of the other in which case said property shall be held and disposed of in the same manner as if this Agreement had not been executed by the parties hereto.

Paragraph 3 states in pertinent part:

> Each party does hereby waive, relinquish and release any and all right, claim, or demand of any kind, nature and description he or she might acquire or have at any time hereafter in any property whatsoever, or against the estate of the other, by reason of the marriage to each other, including rights under community property or equitable distribution laws, or as surviving spouse.

Paragraph 7 states in pertinent part:

> In the event of annulment, separation, legal or by mutual agreement, or pending in a final divorce between the parties hereto, or in the event that the parties hereto have lived apart . . . and one of the parties has no intention of returning, each agrees that there shall be no property settlement or division of property between them either by equitable distribution or any other form of property rights but, each shall keep and retain sole ownership, enjoyment, control and power of disposal of all property of every kind in nature whatsoever now or hereafter acquired by such party in their [sic] name along [sic] . . . free and clear of any interest right or claims of the other (including rights of community property or equitable distribution laws). Upon the happening of any of the events mentioned in the immediately preceding sentence, each irrevocably waives any rights, interest, claims or demand for any property settlement (including rights under community property or equitable distribution laws) and each shall retain sole ownership, control, and power of disposal of all property of any kind or nature whatsoever now owned or hereafter acquired and all increments in value thereto as if such parties have never been married.

The commissioner found that the agreement was not ambiguous, excluded parol evidence as to the parties' intent in drafting the agreement, and determined that the parties mutually waived equitable distribution as to all property. The commissioner submitted a report on his findings to the court on June 17, 2002. Husband filed exceptions to the commissioner's report stating, with regard to the agreement: "Commissioner failed to make a recommendation concerning the issue of equitable distribution, having erroneously ruled that the parties waived equitable distribution, pursuant to the terms of the Premarital Agreement, which the Commissioner recommended be ratified, affirmed and incorporated into the Final Decree."

The chancellor held a hearing on exceptions to the commissioner's report on September 10, 2002.  The chancellor overruled husband's exception, found that there was no conflict in the language of the agreement, confirmed the commissioner's recommendation that the agreement was valid and should be incorporated into the divorce decree, and held that the parties waived equitable distribution as to all property.  A final decree of divorce incorporating the chancellor's decision was entered on October 29, 2002.

## II.  Analysis

One of the primary purposes of a premarital agreement is to establish a distinction in the ownership of property of married couples so that each spouse may hold property free from any rights of the other spouse during the marriage or upon dissolution of the marriage.  Separate property and premarital agreements are commonly understood to convey the notion that, upon marriage, the wife will have her property, the husband will have his property, and each may dispose of that property as if the parties had never married.

"Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms."  Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002).  As a legal question, we first determine whether "the parties set out the terms of their agreement in a clear and explicit writing . . . [such that the writing] is the sole evidence of the agreement."  Durham v. Nat'l Pool Equip. Co., 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964).  The question whether the language of a contract is ambiguous is a question of law which we review *de novo*.  Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994).  Accordingly, on appeal, we are not bound by the trial court's interpretation of the contract provisions at issue; rather, we consider the words of the contract within the four corners

of the instrument itself. Wilson v. Holyfield, 227 Va. 184, 313 S.E.2d 396 (1984); Utsch v. Utsch, 266 Va. 124, 581 S.E.2d 507 (2003).

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Wilson, 227 Va. at 187, 313 S.E.2d at 398 (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).

> A well-settled principle of contract law dictates that "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." A contract is not deemed ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement.

Ross v. Craw, 231 Va. 206, 212-13, 343 S.E.2d 312, 316 (1986) (quoting Globe Co. v. Bank of Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)). Furthermore, "courts cannot read into contracts language which will add to or take away the meaning of words already contained therein." Pysell, 263 Va. at 460, 559 S.E.2d at 678.

"When a written marital agreement is presented, a court applies the same rules of formation, validity and interpretation used in contract law, except where specified by the Code." Shenk v. Shenk, 39 Va. App. 161, 170, 571 S.E.2d 896, 901 (2002) (internal citations omitted). "In reviewing the agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986); see also King v. King, 40 Va. App. 200, 206, 578 S.E.2d 806 809-10 (2003). While the agreement was, in the words of the trial court, "somewhat inartfully drafted," draftsmanship is not the issue; the issue is whether the agreement determines if the parties' jointly titled property is subject to

equitable distribution. "Even though an agreement may have been drawn unartfully, the court must construe the language as written if its parts can be read together without conflict." Doswell Ltd. P'ship v. Virginia Elec. and Power Co., 251 Va. 215, 222-23, 468 S.E.2d 84, 88 (1996).

Analysis of the agreement begins in the preamble, which states, in pertinent part:

> WHEREAS, each of the parties own property in his or her own name and each is desirous that his or her property be distributed on the respective death of each, to his or her lineal descendants or as provided by Wills, other documents of a testamentary nature or lifetime documents which are executed in the future by the parties; and
> WHEREAS, each of the parties hereto are desirous of giving up any and all rights he or she may have in the estate of the other except as provided in this Agreement or in the other's Will, documents of a testamentary nature or lifetime documents which are executed in the future by the parties; and
> WHEREAS, the parties may decide to marriage in the future and in anticipation thereof they desire to fix and determine by premarital agreement, the rights of each in the estate and property of the other.

We find that such language establishes that the purpose of the agreement was to control the disposition of the parties' separate property and that the agreement, other than in paragraph 2, which we discuss below, does not govern jointly titled property. We find that the parties did not waive the application of statutory equitable distribution to the parties' jointly titled property. Three paragraphs in the body of the agreement are at issue regarding division of property: 2, 3, and 7. Taking the paragraphs in reverse order, paragraph 7 specifically governs in the event of divorce. This paragraph states,

> there shall be no property settlement or division of property between them either by equitable distribution or any other form of property rights, but each shall keep and retain sole ownership, enjoyment, control and power of disposal of all property of every kind in nature whatsoever now or hereafter acquired by such party in their [sic] name along [sic]."[2]

---

[2] The parties agree that the word "along" contains a typographical error and should be read "alone." We reject appellee's contention that the word "their" means that the property referred to in the sentence indicates jointly owned property in the couple's mutual married name. Instead,

The paragraph specifically identifies the property at issue as property acquired in his or her name alone. It does not waive equitable distribution of jointly owned property or property voluntarily placed in joint title or property voluntarily placed in the name of the other. To find such would require the court to separate one clause of the provision out of the whole, remove it from context, and ignore a clause of paragraph 2, which would violate principles of contract interpretation. See Pysell, 263 Va. at 460, 559 S.E.2d at 678; Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983); Quesenberry v. Nichols and Erie, 208 Va. 667, 670, 159 S.E.2d 636, 638 (1968); Ames v. American National Bank, 163 Va. 1, 39, 176 S.E. 204, 216 (1934); Allsbury v. Allsbury, 33 Va. App. 385, 390, 533 S.E.2d 639, 642 (2000).

Paragraph 3 provides a mutual waiver of any right or claim in the property of the other that "he or she might acquire . . . *by reason of the marriage*." (Emphasis added). In addition to a waiver of equitable distribution, the waiver precludes application of any laws providing for marital rights in the property of the other (for example, statutes providing for a surviving spouse's elective share pursuant to Code §§ 64.1-13 and 64.1-16, family allowance under § 64.1-151.1, exempt property for the benefit of a surviving spouse provided by § 64.1-151.2, and dower and curtesy (abolished in Virginia after January 1, 1991, see § 64.1-19.2). Thus, despite paragraph 3's later reference to "any property whatsoever," this paragraph could only apply to separate property: (1) to be consistent with the preamble; (2) in the context it is written; (3) to give effect to the words "by reason of the marriage"; (4) by virtue of the examples listed; and, (5) to give effect to all provisions of the agreement. This interpretation makes the specific

we construe this as a grammatical mistake -- "his or her" -- not "their" -- would have been grammatically correct. To hold otherwise would require us to, *inter alia*, alter the meanings of the phrases "between them," "each," "sole ownership," "such party," and "name alon[e]," and ignore the fact that the parties drafted this agreement prior to the marriage, with wife using her maiden name.

waiver of equitable distribution in paragraph 3 consistent with paragraph 2. "The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or paragraph can be omitted in construing the contract if it can be retained and a sensible construction given to the contract as a whole." Ames, 163 Va. at 39, 176 S.E. at 216; Richmond Ice Co. v. Crystal Ice Co., 99 Va. 239, 375 S.E. 851 (1901). The paragraph only waives interest in the separate property of the other that he or she might otherwise acquire or be entitled to by reason of the marriage.

In addition, the *ejusdem generis* rule requires that

> where general words follow particular words, the former are to be regarded as applicable to the persons or things particularly mentioned. The rule applies even if the general words are broad enough to cover other persons and things, unless something in the instrument plainly indicates that they are to be otherwise applied.

Standard Ice Co. v. Lynchburg Diamond Ice Factory, 129 Va. 521, 532, 106 S.E. 390, 393 (1921). Where general words are used in a contract after specific terms, the general words will be limited in their meaning or restricted to things of like kind and nature with those specified. Richmond Ice Co., 99 Va. 239, 37 S.E. 851. Paragraph 2 is the only provision in the agreement that specifically contemplates how jointly titled property, property voluntarily placed in joint title or property voluntarily placed in the name of the other party shall be handled. The paragraph explicitly states that such property is to be held and disposed of "as if this Agreement had not been executed." We find this language expressly and specifically exempts jointly titled property from any of the provisions of the agreement. To construe any other general language in the agreement to override such a specific exemption would be contrary to all rules of construction. Therefore, the disposition of such jointly titled property is to be governed as if there were no agreement, which means that Code § 20-107.3 applies. Separate property not voluntarily placed in the name of the other remains subject to the parties' premarital agreement.

This Court's interpretation gives full effect to each word contained in the agreement and maintains a sensible construction of the agreement as a whole. Paragraph 2 specifically exempts any joint property or property voluntarily placed in joint title or property voluntarily placed in the name of the other party from the agreement. Paragraph 3 waives any right or claim of a party acquired in the separate property of the other by reason of the marriage. Paragraph 7 completes a mutual waiver of any type of settlement or division of property acquired by the other party in his or her name alone either before or after the parties' marriage. Therefore, we find that, while inartfully drafted, the provisions of the agreement are consistent, clear and unambiguous.

The general rule in Virginia is that parol evidence is inadmissible to vary, contradict, or explain the terms of a complete, unambiguous, unconditional written contract. Price v. Taylor, 251 Va. 82, 86-87, 466 S.E.2d 87, 89 (1996). The prenuptial agreement in this case is unambiguous, and, therefore, parol evidence is not admissible. Additionally, the agreement includes an integration clause in paragraph 8, which supports the inadmissibility of parol evidence.

Both parties requested an award of costs and attorneys' fees incident to appeal. Code § 20-99 allows a trial court to award costs incurred in that court; however, it does not provide jurisdiction to the trial court to award costs incurred on appeal. A specific remand for an award of attorneys' fees and costs is required. O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon a review of the record, it is evident that the litigation addressed appropriate and substantial issues and neither party generated unnecessary delay nor expense in pursuit of their respective interests. The Court, therefore, declines to award attorneys' fees and costs to either party.

III. Conclusion

Upon a *de novo* review of the agreement at issue, this Court reverses and remands on the application of equitable distribution to the parties' jointly owned property, affirms with respect to the exclusion of parol evidence, and declines to award attorneys' fees and costs to either party. Therefore, we reverse and remand to the trial court for proceedings consistent with this opinion.

<u>Affirmed in part</u>,
<u>reversed in part</u>
<u>and remanded.</u>