# COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and Senior Judge Petty
Argued by videoconference

CHAMBORD COMMONS, LLC

v.      Record No. 0864-23-1

IMAGE BUSINESS INTERIORS, LLC

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
OCTOBER 29, 2024

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Tanya Bullock, Judge

Barry Randolph Koch (Inman & Strickler, PLC, on briefs), for
appellant.

Brian N. Casey (Clarke, Dolph, Hull & Brunick, PLC, on brief), for
appellee.

Chambord Commons, LLC challenges the circuit court's interpretation of a lease

agreement under which it rented a group of business suites in a shopping center to Image

Business Interiors, LLC ("IBI").  The circuit court held that an addendum to the lease

unambiguously created a new, separate lease for a small space adjacent to the previously leased

suites.  The court further held that a provision in the addendum requiring 12-month notice to

terminate the lease applied only to the addendum and not the original lease, which required only

a 60-day termination notice.  Thus, the court concluded that IBI timely terminated the original

lease by providing Chambord notice to terminate more than 60 days (but less than 12 months)

before the lease's expiration date.  On appeal, Chambord argues that the addendum amended the

existing lease, modifying the 60-day notice provision to require 12-month notice of termination.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

We agree with Chambord, reverse the court's judgment, and remand for further proceedings consistent with this opinion.

BACKGROUND

IBI is a business which sells office furniture. Chambord owns and operates a shopping center. Chambord and IBI entered a lease agreement in December 2016 by which IBI rented four adjacent units in the shopping center totaling 4,230 square feet to use as a furniture and interior design showroom. The lease commenced in February 2017, and terminated three and a half years later on August 31, 2020. Rent was $6,000 per month for the first 14 months, $6,500 per month for the second 14 months, and $7,000 per month for the final 14 months.

Provision 8.01 of the lease provided that the lease term would automatically renew for successive one-year terms unless one of the parties gave written notice of its desire to terminate the lease at least 60 days before the lease's expiration date. Provision 5.04 provided that rent would increase by 1% "per year each rollover year, unless otherwise negotiated."

One month after the initial lease began, the parties executed a document titled "Addendum to Lease Dated and Executed in December 2016 between Image Business Interiors, LLC (hereinafter "LESSEE"), and Chambord Commons, LLC (hereinafter "LESSOR") for the premises at 332 North Great Neck Road, Suites 105, 106, 107, and 108, Virginia Beach, VA 23454." Under the addendum, IBI rented "an additional 220 square feet" adjacent to its suites. The addendum included as an exhibit a floor plan of the suites, with the additional space marked as "Storage."

The addendum contained only three provisions, numbered 1.01, 1.09, and 22.0. The original lease had parallel provisions numbered 1.01 and 1.09 but no provision numbered 22.0 (its numbering stopped at 21.10). Both the original lease and addendum provisions numbered 1.01 defined the "premises." Addendum provision 1.01 defined "premises" to include the four

- 2 -

suites rented under the original lease and the additional 220 square feet. Both the original lease and addendum provisions numbered 1.09 defined the "rent." But addendum provision 1.09 does not reference the rent due under the original lease; it stated only that rent "for this Addendum" will be $150 per month, beginning April 1, 2018, and terminating August 31, 2020.

Addendum provision 22.0, titled "Special Provisions," contained three subsections, as follows:

> a) LESSEE agrees to build out the area described in Exhibit "B" with an access door into the unconditioned storage area, which is shared by LESSEE and LESSOR.
>
> b) LESSEE agrees that at least two of its employees will park in area highlighted in yellow on Exhibit "A" and any additional employees will park in this area.
>
> c) If LESSEE or LESSOR does not give written notice 12 months prior to the end of this lease, the lease will roll over for an additional year with a ~~3%~~ increase in its rent.

In subsection (c), the strike-through was initialed by both parties. Finally, the addendum stated, "All other terms and conditions of the lease dated and executed in December 2016, including all the changes noted in this Addendum, shall remain in effect."

On May 27, 2020, IBI notified Chambord in writing of its intent to terminate the lease agreement, more than 60 days but fewer than 12 months before the lease's expiration date on August 31, 2020. Chambord responded that the lease had been extended until August 31, 2021, because IBI had not provided notice of termination by August 31, 2019, 12 months before the lease's expiration date. IBI then provided notice purportedly terminating the addendum. IBI contended that the addendum constituted a separate lease of only the additional 220 square feet, the 12-month written notice requirement in the addendum applied only to the addendum, and that IBI's termination of the original lease was therefore timely.

IBI ultimately vacated the premises on December 31, 2020.  IBI paid the rent for the 220 square foot space through August 2021, acknowledging that it did not timely terminate the lease for that space, so the lease rolled over for an additional year.  IBI also paid Chambord holdover rent for the main premises through December 31, 2020.  But IBI refused to pay rent under the original lease for January through August of 2021.

Chambord sued to recover the rent under the original lease for January 2021 through August 2021.  At a bench trial, the parties offered evidence and argument in support of their opposing interpretations of the lease and addendum.  In a letter opinion, the circuit court concluded that the lease and addendum were unambiguous and interpreted the documents without considering the parties' parol evidence.  The court held that the addendum created a new, separate lease for a 220 square foot space adjacent to the business suites and that addendum provision 22.0(c) requiring 12-month written notice of termination applied only to the extra space, not the original lease.  Thus, the circuit court concluded that IBI timely terminated the original lease and owed no further rent to Chambord.  On appeal, Chambord argues that the circuit court misinterpreted the contract by concluding that the addendum created a separate lease, and by concluding that addendum provision 22.0(c) only applied to the new lease.

ANALYSIS

"The interpretation of a contract presents a question of law subject to de novo review." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 178 (2016) (quoting *School Bd. of Newport News v. Commonwealth*, 279 Va. 460, 467 (2010)).  "The fundamental question before us in construing a contract is 'what did the parties agree to as evidenced by their contract,' and the 'guiding light' for such construction is 'the intention of the parties as expressed by them in the words they have used.'"  *RECP IV WG Land Investors LLC v. Capital One Bank USA, N.A.*, 295 Va. 268, 283 (2018) (quoting *Schuiling v. Harris*, 286 Va. 187, 192 (2013)).  When a contract "is

- 4 -

plain and unambiguous, we are 'not at liberty to search for its meaning beyond the instrument itself.'" *Wetlands Am. Trust, Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 161 (2016) (quoting *Virginia Elec. & Power Co. v. Northern Va. Reg'l Park Auth.*, 270 Va. 309, 316 (2005)).  Thus, "we must first determine if the relevant contract provision[] [has] a meaning discernible from the words alone, and if so, whether the trial court correctly interpreted [it]." *Babcock & Wilcox Co.*, 292 Va. at 178.

Although Chambord and IBI offer differing interpretations of the addendum, "[a] contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language." *Id.* at 179 (alteration in original) (quoting *Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp.*, 263 Va. 169, 173 (2002)).  Rather, a contract is ambiguous "if its language admits of being understood in more than one way or refers to two or more things at the same time." *RECP IV WG Land Investors LLC*, 295 Va. at 283 (quoting *Wetlands America Trust, Inc.*, 291 Va. at 161).  Conversely, a contract is unambiguous "if its provisions are capable of only one reasonable construction." *Id.* (quoting *Wetlands America Trust, Inc.*, 291 Va. at 161).  "Such an ambiguity, if it exists, must appear on the face of the instrument." *Video Zone, Inc. v. KF&F Props., L.C.*, 267 Va. 621, 626 (2004).  And "when considering the meaning of any part of a contract, we will construe the contract as a whole." *Babcock & Wilcox Co.*, 292 Va. at 179 (quoting *Doctors Co. v. Women's Healthcare Assocs., Inc.*, 285 Va. 566, 572 (2013)).  "No word or clause in the [contract] will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Wetlands Am. Trust, Inc.*, 291 Va. at 161 (quoting *Squire v. Va. Housing Dev. Auth.*, 287 Va. 507, 516 (2014)).

Applying these principles, we conclude that the lease and addendum are unambiguous; their "provisions are capable of only one reasonable construction" when construed as a whole. [1] *RECP IV WG Land Investors LLC*, 295 Va. at 283 (quoting *Wetlands America Trust, Inc.*, 291 Va. at 161). The addendum plainly amended the original lease without creating a new, separate lease. An addendum is "[s]omething to be added, usually to a document; especially, a supplement to a speech, book, contract, or other document to alter its contents or give more information." *Addendum, Black's Law Dictionary* (11th ed. 2019). The addendum in this case is expressly titled as an "addendum" to the original lease. Its three provisions were numbered 1.01, 1.09, and 22.0. This numbering choice shows that the parties intended to modify original provisions 1.01 and 1.09 and add addendum provision 22.0 to the end of the lease after provision 21.10. Indeed, the addendum expressly provided that "all other terms" of the original lease "shall remain in effect," and thus acknowledged that it modified the original lease.

Moreover, on its face the addendum cannot be sensibly read as a standalone lease for the additional 220 square feet. It defined the "premises" to include both the suites rented under the original agreement and "an additional 220 square feet." It includes only two terms specific to the 220 square feet space—1.09 providing the rent, and 22.0(a) requiring IBI to "build out the area . . . with an access door." The addendum does not include any other terms controlling the lease of the additional space, manifesting the parties' intent that the remaining terms of the original lease apply equally to both the original and the additional space. That is to say, when read together, the documents show that the parties intended the lease and addendum to be read as a unitary contract.

---

[1] Although the parties disagree on how to interpret the lease, they agree with the circuit court's determination that it was unambiguous.

It is true that addendum provision 1.09 states that the rent "for this Addendum" will be $150 per month. The circuit court read this language to imply that the addendum is an agreement with "a singular purpose" separate and apart from the original lease. But "in our search for the plain meaning of 'any part of a contract, we will construe the contract as a whole, striving not to "place emphasis on isolated terms" wrenched from the larger contractual context.'" *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 30 (2019) (quoting *Babcock & Wilcox Co.*, 292 Va. at 179-80). The contract's "meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties. However inartfully it may have been drawn, the court cannot make a new contract for the parties, but must construe its language as written." *Allsbury v. Allsbury*, 33 Va. App. 385, 390 (2000) (quoting *Berry v. Klinger*, 225 Va. 201, 208 (1983)). Viewed with the rest of the terms, as described above, addendum provision 1.09 merely expressed the amount of rent due for the additional 220 square feet; it does not create a separate lease for that space.

Next, we address the impact of addendum provision 22.0(c) on original lease provisions 5.04 and 8.01. "When two provisions of a contract seemingly conflict . . . they [should] be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole." *Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 572 (2011) (alterations in original) (quoting *Plunkett v. Plunkett*, 271 Va. 162, 168 (2006)). "Furthermore, a specific provision of a contract governs over one that is more general in nature." *Id.* at 573.

Provision 22.0(c) is specific to the original three-and-a-half-year lease term, whereas provisions 5.04 and 8.01 apply on a continuing basis. Provision 22.0(c) states that "the lease will roll over for *an* additional year" if IBI fails to give proper notice of termination. (Emphasis added). By comparison, provision 5.04 increases the rent by 1% for "each rollover year, unless

otherwise negotiated" and provision 8.01 states that "the lease shall continue in force for successive one (1) year terms" if IBI fails to provide 60-day notice of termination. In this way, provision 22.0(c) is more specific than provisions 5.04 and 8.01 because it only applies to the first extension of the lease, while 5.04 and 8.01 apply to all subsequent extensions. Provision 22.0(c) thus governs the first extension. Provisions 5.04 and 8.01 are not rendered meaningless by this interpretation given that they apply to subsequent extensions, and the seemingly conflicting provisions can thus be read harmoniously. *See id.* at 572-73. Moreover, this interpretation of the contract is the "only . . . reasonable construction" when all its provisions are viewed as a whole. *RECP IV WG Land Investors LLC*, 295 Va. at 283 (quoting *Wetlands America Trust, Inc.*, 291 Va. at 161).

Because provision 22.0(c) required IBI to provide written notice of termination of the lease 12 months before the expiration of the original lease and IBI failed to do so, the original lease extended for one year at the same rental rate. Therefore, the circuit court incorrectly entered judgment for IBI.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and remand this case for a determination of what damages, if any, are appropriate due to IBI's breach of the terms of the lease.

*Reversed and remanded.*